1  Arthur K. Cunningham, SB# 97506
   **LEWIS BRISBOIS BISGAARD & SMITH LLP**
2  650 East Hospitality Lane, Suite 600
   San Bernardino, California  92408
3  Telephone: (909) 387-1130
   Facsimile: (909) 387-1138
4  Akcatty@LBBSLaw.com

5  Christopher D. Lockwood, SBN 110853
   **Arias & Lockwood**
6  225 W. Hospitality Lane, Suite 314
   San Bernardino, CA 92408
7  Phone:  (909) 890-0125
   Fax: (909) 890-0185
8  Christopher.Lockwood@AriasLockwood.com

9  Attorneys for defendants County of Riverside (sued as itself, as "County of
   Riverside Board of Supervisors" and as "County of Riverside Sheriff's
10 Department"), Otis Sterling, III, Lisa DiMaria, Bruck Blanck, Stanley Sniff, Jr.,
   Paul Tesinsky, and Linda Hughes

11

12                    UNITED STATES DISTRICT COURT

13                   CENTRAL DISTRICT OF CALIFORNIA

14

15 DANIEL CARLOS GARCIA,                    )  CASE NO. 11-00034 VAP  (OPx)
                                            )
16       Plaintiff,                         )  REQUEST FOR JUDICIAL
                                            )  NOTICE IN SUPPORT OF
17 v.                                       )  MOTION TO DISMISS
                                            )
18 COUNTY OF RIVERSIDE; COUNTY OF )
19 RIVERSIDE BOARD OF SUPERVISORS;)  DATE:  August 15, 2011
   RODRIC PACHECO; KELLY PATRICK )  TIME:  2:00 p.m.
20 KEENAN; SARA LYNN DANVILLE;     )  ROOM:  2
   OTIS STERLING, III; LISA DiMARIA; )
21 BRUCK BLANCK; COUNTY OF         )
   RIVERSIDE SHERIFF'S DEPARTMENT;)
22 STANLEY SNIFF, JR.; DAN EAGLIN;  )
   PAUL TESINSKY; LINDA HUGHES;    )
23 CASSANDRA MORROW; SECURUS       )
   TECHNOLOGIES, INC.; RICHARD A   )
24 (RICK) SMITH; GLOBAL TEL LINK;   )
   BRIAN OLIVER, and Does 1-10,     )
25 inclusive,                        )
                                     )
26       Defendants                  )
                                     )
27 _____ )

28

                              1

1   A court properly considers facts subject to judicial notice when ruling on a

2   demurrer, and when the facts subject to judicial notice contradict the allegations

3   of the complaint, the false allegations of the complaint are disregarded.  Lee v.

4   Los Angeles Police Department, 2011 U.S.Dist.Lexis 47817, * 17 (C.D. Cal.

5   2011) (false allegation of tort claim compliance is ignored when judicially

6   noticed facts show the absence of any such tort claim); Karen Crane-Mcnab, LLC

7   v. County of Merced, 2009 U.S.Dist.Lexis 29214, 8 (E.D. Cal. 2009) (allegation

8   that all plaintiffs complied with claim requirements is ignored when judicially

9   noticed facts show that some plaintiffs never filed tort claims).

10   The court is requested to take judicial notice that the criminal trial is

11   currently set to start on September 6, 2011.  (Exhibit 1)

12   The original complaint alleged that the criminal court was conducting

13   hearings about plaintiff's allegations.  (Original complaint, ¶ 75)  Plaintiff filed a

14   motion to dismiss the criminal case for alleged prosecutorial misconduct.  The

15   criminal court conducted hearings on multiple days.  During and at the

16   conclusion of all of those hearings the court made factual findings, including:

17   1.  At the June 18, 2010 the court considered plaintiff's motion to prohibit

18   recording of calls to specified people.  It ruled that plaintiff's mother could be

19   considered his spiritual advisor, and ordered that future calls to her not be

20   recorded, but it expressly did not find a privilege as to calls to plaintiff's mother

21   prior to the date of the hearing.  (Exhibit 2)

22   2.  At the January 11, 2011 hearing the court ordered plaintiff to submit

23   copies of all documents he contends were privileged and improperly reviewed.

24   At the January 24, 2011 hearing the court determined that none of those

25   documents was in fact privileged.  (Exhibits 2 and 3)

26   3.  At the February 3, 2011 hearing the court found that no one has listened

27   to any privileged calls, it found no misconduct, and no prejudice to the criminal

28   case.  (Exhibit 4)

1   DATED: June 17, 2011           ARIAS & LOCKWOOD

2

3                          By _____

4                          Christopher D. Lockwood
                          Attorneys for defendants County of

5                           Riverside (sued as itself, as "County
                          of Riverside Board of Supervisors"

6                           and as "County of Riverside
                          Sheriff's Department"), Otis

7                           Sterling, III, Lisa DiMaria, Bruck
                          Blanck, Stanley Sniff, Jr., Paul

8                           Tesinsky, and Linda Hughes

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 1

# RIVERSIDE SUPERIOR COURT

## PUBLIC ACCESS

### Criminal Case Report

#### Pay Ticket / Case Fine

```
Print This Report
```

```
Close This Window
```

### Case INF064492 - Defendants

| Seq | Defendant | Next Court Date | Status | Agency / DR Number | Arrest Date | Count 1 Charge | Violation Date |
|-----|-----------|-----------------|--------|--------------------|-------------|----------------|----------------|
| 1 | MANNING, RUSSELL HERBERT | | | PSPD 0902P4855 | 12/05/2008 | PC 182(A)(1) | 12/05/2008 |
| 2 | NIROULA, KAUSHAL | Trial Readiness Conference 06/10/2011 AT 3:00 PM DEPT. 1B | ACTIVE | PSPD 0902P4855 | 12/05/2008 | PC 187 (A) | 12/05/2008 |
| 3 | REPLOGLE, DAVID | Hearing set re: RECORD DUE BY PATRICIA 07/28/2011 AT 8:00 AM DEPT. DCA | ACTIVE | PSPD 0902P4855 | 12/05/2008 | PC 187 (A) | 12/05/2008 |
| 4 | GARCIA, DANIEL CARLOS | Trial Readiness Conference 06/10/2011 AT 3:00 PM DEPT. 1B | ACTIVE | PSPD 0902P4855 | 12/05/2008 | PC 187 (A) | 12/05/2008 |
| | ALIAS: GARCIA, DANIEL | | | | | | |
| 5 | BUSTAMANTE, MIGUEL ADOLFO | Hearing set re: RECORD DUE BY PATRICIA 07/28/2011 AT 8:00 AM DEPT. DCA | ACTIVE | PSPD 0902P4855 | 12/05/2008 | PC 187 (A) | 12/05/2008 |
| 6 | MCCARTHY, CRAIG ANTHONY | Report and Sentencing 02/24/2012 AT 8:30 AM DEPT. 1B | ACTIVE | PSPD 0902P4855 | 12/05/2008 | PC 187 (A) | 12/05/2008 |

### Case INF064492 - GARCIA, DANIEL CARLOS - Status

| | | | |
|---|---|---|---|
| | | Custody | In Custody |
| Filing Type | Held to Answer | Filing Date | 07/22/2009 |
| Ordered Bail | $0.00 | Posted Bail | $0.00 |
| D.A. | DDA L. DiMaria | Defense | Pro Per |
| Next Action: | Trial Readiness Conference 06/10/2011 AT 3:00 PM DEPT. 1B | Deputy Report #: | PSPD 0902P4855 |

| 8 | PC 115 | F | Forged Instrument | 12/05/2008 | NOT GUILTY | ACTIVE |
| 9 | PC 459 | F | Burglary | 12/05/2008 | NOT GUILTY | ACTIVE |
| 10 | PC F496(A) | F | Receiving Stolen Property | 12/05/2008 | NOT GUILTY | ACTIVE |
| | *Enhancement* | | *Description* | | *Plea* | *Status* |
| | PC 186.11(a)(3) | | Fraud/Embezzlement | | | ACTIVE |

## Case INF064492 - GARCIA, DANIEL CARLOS - Probation

Probation Has Not Been Granted On This Case For This Defendant.

## Case INF064492 - GARCIA, DANIEL CARLOS - Related Cases On Calendar

| Related Cases On Calendar |
|---|
| *This Defendant Does Not Have Any Other Cases With Future Hearings Scheduled.* |

## Case INF064492 - GARCIA, DANIEL CARLOS - All of Defendant's Other Cases

| Case Number | Filed Date | Charges | Next Hearing | Jurisdiction | Status |
|---|---|---|---|---|---|
| *This Defendant Does Not Have Any Other Reportable Cases.* | | | | | |

## Case INF064492 - GARCIA, DANIEL CARLOS - Actions & Minutes

| Action Date | Action Text | Disposition | Hearing Type |
|---|---|---|---|
| 09/06/2011 8:30 AM DEPT. 1B | JURY TRIAL | ACTIVE | |
| 06/10/2011 3:00 PM DEPT. 1B | TRIAL READINESS CONFERENCE | ACTIVE | TRC |
| 06/06/2011 8:30 AM DEPT. 1B | HEARING ON MOTION RE: RECONSIDER SUPPRESSION OF EVIDENCE. | VACATED | |
| 06/03/2011 | EXPARTE APPLICATION FOR IN CAMERA HEARING FILED BY DANIEL GARCIA | | |
| 06/03/2011 1:30 PM DEPT. 1B | TRIAL READINESS CONFERENCE | DISPOSED | TRC |

| Minutes | Print Minute Order |
|---|---|

HONORABLE DAVID B DOWNING PRESIDING.
COURTROOM ASSISTANT: KRH-K. HINOS
COURT REPORTER: KPC-K.CAGNEY
PEOPLE REPRESENTED BY DEPUTY DISTRICT ATTORNEY: DDA L. DIMARIA.
DEFENDANT REPRESENTED BY PRO PER.
DEFENDANT PRESENT.

Exhibit 2

1         IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2           IN AND FOR THE COUNTY OF RIVERSIDE

3

4   PEOPLE OF THE STATE OF CALIFORNIA,  )
                               )

5                    Plaintiff,  )
                               )

6           vs.              )   Case No. INF046449
                               )

7   DANIEL GARCIA, KAUSHAL NIROULA,   )
   and DAVID REPLOGLE,            )

8                               )
                   Defendants. )

9  _____)

10          REPORTER'S TRANSCRIPT OF 1538.5 MOTION

11       BEFORE THE HONORABLE DAVID B. DOWNING, JUDGE

12                DEPARTMENT 1B

13                June 18, 2010

14  APPEARANCE Of COUNSEL:

15

16  For the People:        ROD PACHECO,
                        DISTRICT ATTORNEY

17                      BY: LISA DIMARIA,
                      DEPUTY DISTRICT ATTORNEY

18                      82-675 Highway 111, 4th Floor
                      Indio, CA  92201

19

20  For Defendant Garcia:    DANIEL CARLOS GARCIA, IN PRO PER

21  For Defendant Replogle:  JOHN PATRICK DOLAN, ESQ.
                      45915 Oasis Street

22                      Indio, CA  92201

23  For Defendant Niroula:  KAUSHAL NIROULA, IN PRO PER

24  Also Present:          Luis Bolanos, Investigator
                      Enrique Tira, Investigator

25                      David L. Wright, Esq.
                      1882 S. Caliente Road

26                      Palm Springs, CA  92264

27

28  Reported By:           JACKIE LENORE MUSSELMAN, CSR 5681

JACKIE LENORE MUSSELMAN, CSR NO. 5681

```
 1    together and do this.  Absent that, okay?  What reasonable time
 2    frame, Detective Min?  Reasonable.
 3            DETECTIVE MIN:  Four weeks, maximum, because the
 4    Secret Service agent also is on a Presidential detail.  When
 5    the President goes on the West Coast, he has to follow.  So I
 6    can't guarantee that he is going to be here -- next week he is
 7    going to be here.
 8            THE COURT:  All right.  Do the best you can.
 9            MS. DIMARIA:  But if he is here next week, we could
10    get it next week?
11            DETECTIVE MIN:  Absolutely.
12            MS. DIMARIA:  It depends?
13            DETECTIVE MIN:  It depends on his schedule.
14            THE COURT:  That should be worked out with your
15    detective.  Okay.
16            The other part I've got to talk about then, I will
17    switch to Mr. Niroula, is that which I didn't do last time.
18            Mr. Garcia, the motion you filed entitled request
19    motion for protective order against recording privileged calls.
20    We didn't rule on that; correct?
21            MR. GARCIA:  Correct.
22            THE COURT:  And the issue there, I think was on
23    page -- do you have a copy of that, Miss DiMaria?
24            MS. DIMARIA:  I have not had a chance to look at it.
25    I have been in trial until five o'clock last night.  I think I
26    have a copy.
27            THE COURT:  All right.  Page 1, he has a list of
28    people he doesn't want to have recorded.
```

1          MS. DIMARIA:  What -- hold on a second.  What is his

2     motion called?  Which one?

3          THE COURT:  Protective order against recording

4     privileged calls.  I believe we talked a little bit but, I

5     believe Miss DiMaria, if I could ask or stipulate to all but

6     one.  I think there is only one number she's concerned about.

7     Your mom.

8          MR. GARCIA:  Correct.

9          MS. DIMARIA:  Your Honor, in regard to the attorneys,

10    I have said this, to use Detective Min's words, until I am blue

11    in the face.

12         THE COURT:  Yeah.

13         MS. DIMARIA:  The attorneys need to call the jail and

14    get their phone number registered, and then the jail

15    automatically does not record them.

16         THE COURT:  Okay.  I will do an order so that the

17    record will bear out what I have done, and Mr. Garcia will --

18    so starting with Mr. Bolanos, granted.  You can't record his

19    calls between the two of them.  That next is Mr. Wright, the

20    lawyer.  Granted.  Donald Mctill, esquire.  If he is a lawyer,

21    granted.  The jail will take the bar card.  If he doesn't have

22    one, he is not on the order.

23         Darren Kadinoky, K-A-D-I-N-O-K-Y.

24         MR. GARCIA:  Darren Kadinoky.  He is one of the most

25    well respected top one hundred trial attorneys in California.

26         THE COURT:  I never heard of him.  If he is a lawyer,

27    granted.

28         Vanessa Christopher.  Is she a lawyer?

```
 1          MR. GARCIA:  She works for Kadinoky Law Firm.

 2          THE COURT:  Is she a lawyer?

 3          MR. GARCIA:  Um, I am not sure if she's a paralegal or

 4  his lawyer, but she's the main person you speak to when you

 5  call him, so it would be attorney work product.

 6          THE COURT:  Granted.  Pastor Michael Sufielbein,

 7  S-U-F-I-E-L-B-E-I-N.

 8          MR. GARCIA:  I will withdraw that one.  I don't have

 9  any intention of calling him any more.

10          THE COURT:  Granted.  How about reverend Angela

11  Garcia?

12          MR. GARCIA:  That's my mother.  And I would also offer

13  a signed declaration from my mother, specifically, detailing --

14  um, I haven't had a chance to give it to the Court.

15          THE COURT:  All right.  But she is a licensed

16  minister; is she not?

17          MR. GARCIA:  She is.

18          THE COURT:  Well, then  --

19          MS. DIMARIA:  Your Honor, the People would object.

20          THE COURT:  Is Miss Garcia a licensed minister, yes or

21  no?  If she's not, I'm not going to grant the order.  If she

22  is, I think I have to grant the order, don't I?

23          MS. DIMARIA:  Well, Your Honor, for starters, this

24  appears to be just nothing more than a declaration from her.

25          THE COURT:  Yeah, but I have other stuff that shows

26  that.

27          MS. DIMARIA:  I haven't been.  But another thing I

28  would point out, Your Honor, I mean, one thing I looked at is
```

1    the Simmons California Evidence Manual regarding clergy

2    penitent privilege, and People versus Thompson, 133CalAp3d,

3    419, and it makes pretty clear that not all confidential

4    communications to a member of the clergy are privileged.

5             THE COURT:  I know that.  Go ahead.

6             MS. DIMARIA:  The Court must consider the nature and

7    the function being performed by that individual.  When he has

8    spoken with his mother, for the calls I listened to, I think a

9    majority were in '09, um, they talk, he wants law books from

10   her, he talked about me, he has talked about the case, he

11   talked about court dates, he talked about everything.  They are

12   not penitential-type of communications where he is looking for

13   absolution from his mother as a clergy person.  Um, these are

14   typical conversations any boy would have with his mom.  And

15   according to the case law that I just stated, the threshold

16   question is what is the nature of the functions being performed

17   by the person receiving this statement.

18            THE COURT:  And how am I going to determine that?

19            MR. GARCIA:  Your Honor, I might have a potential

20   solution to make this easy.  I spoke with the jail commander

21   yesterday.  I told him I don't have a problem with the calls

22   being recorded or even listened to by the jail for security

23   reasons.  I am not planning anything, so if they need to

24   monitor them, I am not worried about that.  I would ask, before

25   they be given over to the prosecution, if Your Honor doesn't --

26   doesn't feel comfortable that my mother is a qualified

27   minister, then I would ask that a special master be appointed

28   to review the calls to make sure that there isn't any penitent

1    material beforehand, going over to the District Attorney.   That

2    might be a compromise that would make everyone happy, unless

3    Your Honor agrees, I would wish it be blocked, period.

4         MS. DIMARIA:  Your Honor, as I mentioned, the calls I

5    have seen in the past are in the hundreds, and he talks on the

6    phone with his mother for anywhere from 20 minutes to hours at

7    a time.  And it says right here, um, again, the same case I

8    just cited, the priest-penitent privilege recognizes the human

9    need to disclose to a spiritual counselor in total and absolute

10   confidence what are believed to be flawed acts or thoughts and

11   to receive priestly absolution and guidance in return.  Those

12   are not the nature of the phone calls he has had with his

13   mother.

14        MR. GARCIA:  Your Honor, what more could there be to

15   talk about than a case in which I am charged with capital

16   murder?  Clearly, um, speaking to a spiritual advisor on a

17   regular basis is important to maintain my sanity in this

18   situation.

19        THE COURT:  Miss DiMaria, is there a problem if I

20   don't grant it, and Mr. Garcia has conversations with his mom

21   that follow the penitent-patient privilege, how are we going to

22   sever those all out?  Because he may have those and that kind

23   of things and all of that, it would be a nightmare to sort it

24   all out.  And there is no way I am going to do that -- that

25   doesn't work -- appoint a special master.  You can't do it.  We

26   don't have that kind of time.  We're talking about thousands;

27   right, Miss DiMaria?

28        MS. DIMARIA:  So what stops anybody then from wanting

1    to speak with anyone they're close to, or running on the

2    internet, getting ordained real quickly, and then coming in and

3    saying, all of my calls need to be blocked.  He wanted to do

4    that with Alex Shahbazian.

5           MR. GARCIA:  Alex Shahbazian is actually an ordained

6    minister from 2006.  My mother didn't merely go on line, Your

7    Honor.

8           THE COURT:  I know.  I am aware of that.  All right.

9    Granted as to his mom.  Move onto something else.

10          MS. DIMARIA:  Your Honor, to be clear, granted from

11   this day forward?

12          THE COURT:  Yes.  And any other -- any other -- any

13   other --

14          MR. GARCIA:  What about the previous calls, Your

15   Honor?

16          THE COURT:  I'm not getting into that.  They're

17   subject to a 402 hearing, and we can decide that.  I am not

18   going to spend a week listening to phone calls to your mom

19   before the trial starts.

20          MS. DIMARIA:  It could take up to a year.

21          THE COURT:  All right.  So we're not doing it.  So Mr.

22   Garcia, the People aren't going to be able to use them.  I am

23   not going to sit here and spend that much time on it, because I

24   don't have that much time before the trial starts.

25          Anything else you need to do?  Because I am going to

26   run out of time, folks.  Four o'clock I am leaving, done.

27          MR. GARCIA:  One quick matter.  There is, I believe,

28   another just talking about if I understand, I just wanted to

1                        REPORTER'S CERTIFICATE

2

3    PEOPLE OF THE STATE OF CALIFORNIA,   )
                                          )
4                        Plaintiff,       )
                                          )
5              vs.                        )    Case No. INF046449
                                          )
6    DANIEL GARCIA, KAUSHAL NIROULA,      )
     and DAVID REPLOGLE,                   )
7                                          )
                         Defendants.      )
8    _____)

9

10

11

12       I, Jackie Lenore Musselman, Certified Shorthand Reporter,

13   No. 5681, do hereby certify:

14       That on June 18, 2010, in the County of Riverside, State

15   of California, I took in stenotype a true and correct report of

16   the testimony given and proceedings had in the above-entitled

17   case, Pages 197 through 345, and that the foregoing is a true

18   and accurate transcription of my stenotype notes, taken as

19   aforesaid, and is the whole thereof.

20

21

22

23   DATED:  Eureka, California, April 13, 2011.

24

25

26                    _____
                      JACKIE LENORE MUSSELMAN, CSR 5681
27

28

Exhibit 3

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF RIVERSIDE

PEOPLE OF THE STATE OF CALIFORNIA,            )
                                              )
                Plaintiff,                    )
                                              )
     vs.                                      )   Case No.  INF064492
                                              )
DAVID REPLOGLE, KAUSHAL NIROULA, CRAIG        )
ANTHONY MCCARTHY, MIGUEL ADOLFO BUSTAMANTE,   )
DANIEL CARLOS GARCIA,                         )
                                              )
                Defendants.                   )
                                              )

REPORTER'S TRANSCRIPT EXCERPT OF THE TESTIMONY OF

WITNESS LISA DiMARIA

Before the Honorable David B. Downing, Judge, Department 1B
                      January 11, 2011

APPEARANCES:
For the People:            OFFICE OF THE DISTRICT ATTORNEY
                           BY:  LISA DIMARIA, Deputy
                           BY:  MATT REILLY, Deputy
                           82-675 Highway 111, 4th Floor
                           Indio, California 92201


For the Defendant          IN PRO PER
Niroula:

For the Defendant          IN PRO PER
Garcia:

Also Present:              ROBIN SAX, ESQ.
                           SCOTT D. KARPF, ESQ.
                           1434 Westwood Boulevard, Suite 17
                           Los Angeles, California 90024


                           Enrique Tira, Investigator

                           Jeffrey Reed, Investigator



Reported by:               KATHLEEN P. CAGNEY, CSR 10850



1   the court reporter briefly, everyone.  There's been no request

2   made of transcripts of those dates that we're talking about,

3   so -- at least with this court reporter.  I don't know about

4   others.  There have been multiple court reporters, maybe, in

5   here.  Although Ms. Cagney is the assigned court reporter, from

6   time to time, other people have sat in and reported, so my guess

7   is a couple, three others, maybe four others at various times.

8   So you know, you might keep that in mind.

9           All right.  The date set is the 24th of January.

10          Mr. Garcia, would you have your investigator please

11  prepare a subpoena from yourself to Sergeant Hughes for 8:30 on

12  January 24th delivered to the Court here tomorrow, and I will

13  take care of getting it served.

14          DEFENDANT GARCIA:  I can actually print it out right

15  now.

16          THE COURT:  That would be fine because the sheriff

17  requires a subpoena.  I'll get Sergeant Hughes here.  So

18  Sergeant Hughes is set for 8:30 on the 24th, Investigator Blanck

19  for 9:30, and whoever else after that, resume with Ms. DiMaria

20  or we won't depending on her view about lawyers, et cetera, and

21  you all had time to think about that subject.

22          Mr. Garcia, thank you for telling us that you filed

23  that with the feds.  Appreciate your telling us.  Thank you.

24          DEFENDANT GARCIA:  Yes.

25          MS. DiMARIA:  In regard to him printing out documents,

26  he was ordered last time and this morning to print out whatever

27  documents he felt were privileged from his box.  We still

28  haven't received those.

1        THE COURT:  I know.

2        MS. DiMARIA:  Can we have a court order that that be

3   done, please?

4        DEFENDANT GARCIA:  I don't want to distract the court

5   reporter with printing going on.  It's quite loud.

6        THE COURT:  Okay.  We need those documents.

7        MS. DiMARIA:  Can I have those ordered delivered to my

8   office by 3:00 today, please.

9        DEFENDANT GARCIA:  Actually, Ms. DiMaria has them.

10  They're all in Bates.

11       MS. DiMARIA:  I don't know which ones he is claiming

12  are privileged.

13       THE COURT:  Correct, we don't know which ones.

14       MS. DiMARIA:  So may I have an order he deliver

15  whichever documents he deems privileged to my office by 3:00

16  o'clock today, Your Honor?

17       INVESTIGATOR J. REED:  That's not feasible, Your Honor.

18  We're going to be out of here in a minute.  We're going back to

19  the jail, see him, he's going to print them probably by

20  tomorrow.

21       MS. DiMARIA:  He was ordered to do this last week.  You

22  asked him if a week was enough.

23       THE COURT:  Everyone, time out.  I have a hearing that

24  has to start at 1:30 today.  It's set in stone.  There's nothing

25  I can do about it.

26       Can you bring Mr. Garcia back at 1:00 o'clock?

27       THE DEPUTY:  Maybe.

28       THE COURT:  Because I was thinking you could just do

1    the printing when he comes back, and we can get --

2         How long will it take to do the actual printing,

3    Mr. Garcia?  I mean, can you do it in 20 minutes?

4         DEFENDANT GARCIA:  I believe so.

5         THE COURT:  I'm willing to try it.  I mean I can bump

6    our hearing for ten minutes this afternoon, but not much more.

7    I've got to start because the persons are coming from Indiana,

8    so I've got to do it.

9         DEFENDANT GARCIA:  My point is if the hearing isn't

10   until the 24th, then why can't we just provide them tomorrow?

11   It would allow me to meet with my runner tonight.  There's over

12   200 pages.  It would allow me to go through and print the ones

13   and deliver them tomorrow rather than taking up court time.

14        THE COURT:  Ms. DiMaria, I just talked to the deputy.

15   There's no way I can get him back.  If I didn't have anything

16   this afternoon, I'd bring him back at 1:15, and he could do all

17   the printing, and it would be delivered, but I can't do it

18   today.

19        MS. DiMARIA:  How about by 9:00 o'clock tomorrow?

20        THE COURT:  Let's do it tomorrow.  Make it in the

21   morning, please, so we get it done just in case.

22        MR. REILLY:  And just to clarify, Your Honor --

23        THE COURT:  Okay.

24        MR. REILLY:  -- we're not talking about a wholesale

25   copying of the documents that were seized from defendant's cell.

26   What we're talking about is those documents that he claims are

27   privileged.

28        THE COURT:  Okay.  I don't know what they are, folks.

1    MR. REILLY:  I don't either, but if we receive a packet

2    of all of the documents that have been copied and given to

3    Mr. Garcia in discovery, then that will not be in compliance

4    with this Court's order.

5    THE COURT:  We're not going to do that.  Talking

6    about --

7    MS. SAX:  Just to facilitate the process, if we can,

8    what I'd like to do is if we can make a Bates reference, we

9    don't even need to print them out.  We can show which ones in a

10   chart form, but it's going to -- that can add a little bit of

11   streamlining only because of trying to get this all together,

12   three hours just doesn't feel reasonable.  If we can have by

13   tomorrow, that would be fabulous.

14   MS. DiMARIA:  Well, he's had a week.  Actually, he's

15   had since he filed the motion.  But, Your Honor, I would accept

16   by 12:00 o'clock tomorrow.

17   MR. REILLY:  The idea regarding the Bates I don't think

18   is appropriate because in his motion, Mr. Garcia has numbered

19   documents differently than --

20   THE COURT:  Yeah, I know.  Let's print them out,

21   please.  You've got until noon tomorrow.  Okay, everyone, can we

22   do that?

23   DEFENDANT GARCIA:  Yes, we can, Your Honor.

24   MS. SAX:  Thank you, Your Honor.

25   THE COURT:  Listen, if worse comes to worst, everyone,

26   and the jail interferes or something happens, the jail goes on

27   lockdown, or whatever, I suppose we could bring Mr. Garcia back,

28   not for anything other than to sit there and print.  I don't

REPORTER'S CERTIFICATE

PEOPLE OF THE STATE OF CALIFORNIA, )
                                   )
                    Plaintiff,     )
                                   )
        vs.                        )        Case No. INF064492
                                   )
DAVID REPLOGLE, KAUSHAL NIROULA, CRAIG   )
ANTHONY MCCARTHY, MIGUEL ADOLFO BUSTAMANTE, )
DANIEL CARLOS GARCIA,              )
                                   )
                    Defendants.    )
                                   )
_____)

          I, KATHLEEN P. CAGNEY, Certified Shorthand Reporter,

No. 10850, do hereby certify:

          That I reported the proceedings in the above-entitled

action in the County of Riverside, State of California, heard on

January 11, 2011, and pages 1 through 15, inclusive, constitute

a complete and accurate transcription of my shorthand notes.

DATED:  Indio, California, April 12, 2011

          _____
          KATHLEEN P. CAGNEY, CSR NO. 10850

# Exhibit 4

1            SUPERIOR COURT - STATE OF CALIFORNIA

2                COUNTY OF RIVERSIDE

3

4

5

6   PEOPLE OF THE STATE OF CALIFORNIA, )
                           )

7               Plaintiff,    )

8              vs.      ) Case No. INF 064492
                           )

9   DANIEL CARLOS GARCIA,       )
                           )

10                Defendant.   )
   _____)

11

12

13    MOTION TO DISMISS AND/OR RECUSE THE DISTRICT ATTORNEY

14           FOR PROSECUTORIAL MISCONDUCT

15        Before the Honorable David B. Downing

16               February 3, 2011

17

18

19   APPEARANCES:

20   For the Plaintiff:     OFFICE OF THE DISTRICT ATTORNEY
                         BY:  IVY FITZPATRICK

21                            MATTHEW REILLY

22                      3960 Orange Street
                      Riverside, California  92501

23                        LISA DiMARIA
                      82-675 Highway 111, Fourth Floor

24                      Indio, California  92201

25   For the Defendant:     DANIEL CARLOS GARCIA, IN PRO PER
                      BK 200911640

26                      P.O. Box 1748
                      Indio, California  92202

27   ORIGINAL

28   Reported by:          JULIE GIMINEZ, CSR NO. 8396

1    that you clearly recognize as legal mail?

2        A.   That is correct.

3        Q.   Like, a letter from a lawyer with the lawyer's address

4    saying, "Joe Schmuck, Attorney at Law"?

5        A.   I would not look at that.

6            THE COURT:  Okay.  All right.  Anything else, folks, of

7    Sergeant Hughes while she's here?

8            MS. DiMARIA:  Not from the People, sir.

9            DEFENDANT GARCIA:  No, Your Honor.

10           THE COURT:  Sergeant Hughes, thank you, ma'am.  You are

11   excused, subject to recall.

12           THE WITNESS:  Thank you.

13           THE COURT:  You're welcome.

14           Who's your next witness, Mr. Garcia?

15           MS. DiMARIA:  Your Honor, may I inquire, sir, if you

16   would be willing to take a break in the proceedings and review

17   the documents at this time?  The People's position is:  If none

18   of these documents were privileged, then none of this is

19   necessary.  If he wants to move to suppress them, that would be

20   a 1538.5.

21           THE COURT:  I know.  Hold that thought for a minute.

22   You have a point.

23           Mr. Garcia, it's now 10:00 o'clock.  We have to stop at

24   noon, does Investigator Blanck have anything to do with this

25   issue?

26           DEFENDANT GARCIA:  Yes.

27           THE COURT:  Okay.  How about -- who else have we got?

28           DEFENDANT GARCIA:  Diaz.

```
 1          THE COURT:  Diaz, yeah.  How long is Diaz going to
 2   take?
 3          DEFENDANT GARCIA:  Less than Linda Hughes.
 4          THE COURT:  Okay.  Let me take a couple minutes and
 5   look at that stuff real quick, please.  All right.  And I'll
 6   take a short, short, short, short recess, please.  Okay.
 7          MS. DiMARIA:  I know investigator --
 8          THE COURT:  Here's what I'd like you to do, gentlemen,
 9   before I go off the record.  Mr. Niroula, Mr. Garcia, I'm
10   concerned about the trial date.  Okay.  I'll say it again:  I
11   don't care when it goes.  It goes in March or it goes in
12   September.  That's your choice.  You pick, I don't care.
13          You said that you wanted -- you two gentlemen want to
14   talk about the date.  Because I've got to decide today, no later
15   than tomorrow morning, folks.  I've got to decide.  You wanted
16   to talk, so why don't you spend five minutes and talk about
17   that?  You said you wanted to talk about the trial date while
18   I'm doing this.  We're off the record.
19                         (Recess)
20          THE COURT:  All right.  Let's go back on the record,
21   then, in Mr. Garcia's matter and Mr. Niroula's matter after a
22   short recess in which I looked at the alleged privileged
23   materials.  All the parties that were present this morning at
24   the beginning of this hearing are still present, so we're
25   resuming that.
26          For the record, I was handed a bunch of documents.  I
27   didn't count them, but there's probably 50 or 60 pages here that
28   I looked through to see if there's anything privileged in there,
```

1  and I shall tell everybody the page -- the first one on top of

2  the stack is written by Investigator Blanck which is just a

3  police report about searching the property box.

4       There's a document marked, "confidential," written to

5  Mr. Garcia by somebody named William Gehrke, G-e-h-r-k-e.  I

6  don't know who that is.  And then there's a whole -- there's

7  probably 15 typewritten letters from Mr. Garcia's mom and dad to

8  him in the jail, and there's a bunch of phone numbers xeroxed

9  out of what looks like a phonebook, someone's little notebook

10  with phone numbers and all.  So I don't see -- and important is

11  the dates from Mr. Garcia's mom are in April through August of

12  '09.

13       This is important because at some point long after

14  that, I don't remember the exact date, I decreed that

15  Mr. Garcia's mom was privileged communication because she is

16  the -- a counselor, and I found there was a privilege, but I

17  made that determination a year after the date on these letters.

18       MS. DiMARIA:  Yes, sir, June 2010.

19       MR. REILLY:  June 18th.

20       THE COURT:  So these letters from Mr. Garcia's mom to

21  him don't fall under the privilege.  The ones I have don't

22  because she wasn't listed on -- as a privileged person then.

23  So, I don't see that any of these are privileged.  Arguably,

24  there is a long handwritten document with the word

25  "confidential" at the top, "to Danny" from this other person

26  regarding Lambert, but that doesn't mean it's confidential,

27  folks, just because someone writes "confidential" on it.

28       DEFENDANT GARCIA:  Your Honor, if I could be heard.

1    THE COURT:  But anyway, the lawyer for the D.A.'s

2   Office comment is everybody's seen them.  They've been passed

3   around by everybody in discovery because that's the way it's

4   done.  So, even if they were privileged, the cat's out of the

5   bag, so to speak.  Everybody's looked at them.  It's just the

6   way it is, but I don't see it.

7    DEFENDANT GARCIA:  Your Honor, on the issue of Reverend

8   Angela Garcia, who happens to be my mother, Your Honor may have

9   issued the protective order against recording her calls

10  June 18th.

11   THE COURT:  You're right, I did.

12   DEFENDANT GARCIA:  That does not mean that that right

13  to privilege is miraculously was bestowed on her that day.

14  Privilege is created by statute, not by judicial decree.

15   THE COURT:  Yes, Mr. Garcia, thank you.  I know.  The

16  problem is that, Mr. Garcia, the letters don't have her

17  letterhead saying, "Angela Garcia, Ph.D.," or whatever.  So

18  there is no way that anybody would know that she is a privileged

19  person.

20   Sergeant Hughes testified, because I think I asked

21  her -- I did ask her -- if you had a letter with "Joe Schmuck,

22  Attorney at Law," on it, she said, "I would consider that

23  privileged because it's a lawyer's correspondence."  I didn't

24  ask her if she saw a person with Ph.D. or whatever on it, but

25  the same thing applies.

26   The letters in the file that you just showed me are

27  from "Mom and Dad."  They don't have any other identifying

28  information.  There's no way that anybody looking at those would

1    know anything more than they're from mom and dad, which is not

2    privileged.

3           DEFENDANT GARCIA:  That's the problem, Your Honor.  My

4    mother was actually recognized by the Sheriff's Department in

5    2009 as well as the California Department of Corrections as

6    being an ordained minister.  She was granted special privileges

7    with Riverside County Sheriff's Department to visit with inmates

8    in official clergy capacity.  That occurred in 2009.

9           And all of her letters were in fact in envelopes that

10   very clearly said, you know, "religious mail," et cetera.

11   There's a stamp on them, and she put her return address,

12   "Reverend Angela Garcia."  The problem is they then take the

13   envelopes from the inmate because they're afraid you'll put LSD

14   or something underneath the stamp, so we don't get the

15   envelopes.  Then all of the sudden, privilege disappears.  Linda

16   Hughes can then say, "Oh, I didn't know because it wasn't in an

17   envelope."

18          THE COURT:  Mr. Garcia, I believe Sergeant Hughes'

19   testimony.  I believe that she would not willfully, from her

20   testimony, open up something that was clearly legal mail or

21   privileged, and so she did what she did.  So I ruled as I ruled.

22   I hear your point; but, on the other hand, my ruling is they're

23   not privileged.  That's it.  Let's call your next witness,

24   please.  Let's go.  We're running out of time folks, it's 10:30.

25          Investigator Blanck, I assume.  He's here.

26          DEFENDANT GARCIA:  Correct, however, in light of Your

27   Honor's ruling, I really don't see any point in continuing to

28   question him if there's no violation of privilege as Your Honor

1      has ruled.

2            MS. DiMARIA:  Sir, I agree, which Your Honor quite

3      frankly is why I was asking you to have reviewed these earlier

4      because, with no privilege, there's no violation, so I agree.

5            THE COURT:  Okay.  All right.  So who's the third --

6      Investigator Diaz?

7            DEFENDANT GARCIA:  Correct.

8            THE COURT:  Okay.  Investigator Blanck is standing in

9      the back of the room.  Do you want me to excuse him, subject to

10     recall, Mr. Garcia, or just excuse him flat-out?  Which?

11           DEFENDANT GARCIA:  I'm sorry, Your Honor, one more

12     time.

13           THE COURT:  Okay.  Investigator Blanck is standing at

14     the back of the courtroom.  Do you want me to excuse him subject

15     to recall or do you want me to just flat-out excuse him?

16           DEFENDANT GARCIA:  Excuse him, subject to recall,

17     depending on Ms. DiMaria's testimony.

18           THE COURT:  Okay.  Investigator Blanck, thank you for

19     being here today, sir.  You're excused subject to recall.  Thank

20     you.

21           MS. DiMARIA:  Your Honor, I apologize.

22           Mr. Garcia, maybe you were going to address this.  Were

23     you going to address Detective Diaz, sir?

24           DEFENDANT GARCIA:  Yeah, and again, I would also agree

25     to dismiss him as well.  Since it's along the same search, it's

26     the same scenario basically.

27           THE COURT:  I don't know.  Where is Investigator Diaz?

28     Is he outside?

1   don't know what her position may be.  But it appears,

2   Mr. Garcia, that your complaint here is against the DA's office,

3   not against the sheriff per se.

4          MR. GARCIA:  Your Honor, I -- I --

5          THE COURT:  So, but anyway, you can tell me what?

6          MR. GARCIA:  It's actually against both.  To clarify,

7   my motion was for outrageous government misconduct, not just the

8   prosecutor.  I think --

9          THE COURT:  Okay.  Okay.  Keep that thought.  I haven't

10  found any evidence of any willful misconduct on anybody's part.

11  Either the DA or the sheriff.  I haven't.  There just hasn't

12  been any evidence of it.  None at all.  You know, I haven't

13  found any.  There's no witnesses that said that.  The only thing

14  that the property box was searched, but I don't know that that's

15  improper.  But in any case, the phone calls, I just can't

16  attribute them to any type of misconduct by anybody.

17         MR. GARCIA:  Your Honor --

18         THE COURT:  I saw the list.  I know what your position

19  is, but I don't see it, anything that happened being willful

20  misconduct on the part of the DA's, even if -- on the part of

21  anybody.  But go ahead.

22         MR. GARCIA:  I think there's a couple of issues here.

23  First that I would address is the Riverside Sheriff's Department

24  is absolutely involved in investigating this case.  They have

25  been since Mr. Bustamante was first arrested.  They're the ones

26  who first interfaced with Mr. Jimenez.  They resulted in maps

27  being turned over and notes.  Ms. Pemberton has interviewed

28  potential witnesses within the jail, informants.  They have

```
 1    team, whether it's the motion writers, outside private
 2    attorneys, the investigators, et cetera.  We know that they can
 3    conduct a search surreptitiously of my property box so I sure as
 4    heck don't want to have anything sensitive in there.  And as
 5    Your Honor's ruling the other day stated, unless I very clearly
 6    state at the top of it an attorney's address or this is legally
 7    privileged mail, even my handwritten notes aren't going to be
 8    privileged.
 9              THE COURT:  Yes.  And that's one reason that I was
10    advocating and advocating the laptop for -- for yourself that --
11    so that everything in your case is on the laptop.  You have the
12    password for it.  It's held in the jail.  You go in there to
13    use -- you -- you go in a room by yourself, you use it for
14    whatever purposes you need to, make notes or whatever,
15    everything stays in one place and no one has access to it but
16    you.  The writ that the county counsel filed -- which they
17    didn't bother to give me before they got to you all, which is
18    true, you got it, I haven't got it -- doesn't want to do that.
19    But we're not there yet.
20              But the bottom line is still the same, Mr. Garcia.  The
21    DA hasn't listened to any of the calls between you and your
22    privileged people.  They haven't.  I believe that to be true.
23    If I thought they had listened, we would have a different
24    position here.  And I'm reading up here Judge Zellerbach's
25    finding in Medina.  Medina is not a published case, and I'm not
26    using it for that purpose.  But in that case, Mr. Zellerbach
27    found that the DA investigator had listened to the calls
28    improperly and bumped, bounced, relieved, whatever, that DA
```

110

JULIE GIMINEZ, CSR

1    somebody who's privileged, but nobody knew it.  These things

2    happen.  But it's not -- what prejudice is there.

3          You have -- under *Morrow* you have to show prejudice,

4    okay.  The burden is on the defense.  If misconduct is shown,

5    the burden shifts to the People, et cetera.  We know that

6    already.  The sanctions are not warranted because the defendant

7    was not prejudiced by the misconduct.  First of all, I'm not

8    saying there was any misconduct.  Because I don't find any.  So

9    the first threshold is there is no misconduct.  And prejudice is

10   always worrisome, anyway.  But how were you prejudiced?

11         MR. GARCIA:  Well --

12         THE COURT:  Other than what you've said.  But that's

13   just your theory.  I know, because I've sat here and listened to

14   what, 55 or so of your occurrences in which you have complained

15   constantly about the way you're treated in jail.  I agree with

16   some of what you say.  I've always agreed with some of what you

17   said.  I realize it's difficult to represent yourself, and I

18   told you that back in May, when you wanted to represent

19   yourself.  I understand all that.  I tried to talk you out of

20   it.  I tried to talk you out of it repeatedly because I see what

21   the problems are.  But some of them I can't fix.  You know, I

22   can't.  I realize that you don't trust the jail.  I realize you

23   don't trust your jailers.  I realize you're worried that

24   somebody will hear what you're talking about when you're talking

25   with one of your investigators.  I know all that.  I don't

26   necessarily blame you, Mr. Garcia.  But some things I can't fix.

27   It's not a perfect world.  I just don't see here in this motion

28   that you have shown any misconduct or certainly any prejudice.

116

```
 1
 2
 3                        REPORTER'S CERTIFICATE
 4
 5
 6   PEOPLE OF THE STATE OF CALIFORNIA,  )
                                         )
 7                       Plaintiff,      )
                                         )
 8             vs.                       )  Case No. INF 064492
                                         )
 9   DANIEL CARLOS GARCIA,               )
                                         )
10                       Defendant.      )
     _____)
11
12
13          I, Julie Giminez, Certified Shorthand Reporter,
14   No. 8396, hereby certify:
15          On February 3, 2011, in the County of Riverside, State
16   of California, I took in stenotype a true and correct report of
17   the testimony given and proceedings had in the above-entitled
18   case, pages 1-155, and that the foregoing is a true and accurate
19   transcription of my stenotype notes and is the whole thereof.
20
21
22   DATED:  Indio, California, April 19, 2011.
23
24
25
26                            JULIE GIMINEZ, CSR No. 8396
27
28
```