1  GREENBERG TRAURIG, LLP
2  ROBERT J. HERRINGTON (SBN 234417)
   herringtonr@gtlaw.com
3  MATTHEW R. GERSHMAN (SBN 253031)
   gershmanm@gtlaw.com
4  2450 Colorado Avenue, Suite 400E
   Santa Monica, California 90404
5  Telephone: (310) 586-7700
   Facsimile: (310) 586-7800
6
7  Attorneys for Defendants
   GLOBAL TEL*LINK CORPORATION and
8  BRIAN OLIVER
9
10               **UNITED STATES DISTRICT COURT**
11
                **CENTRAL DISTRICT OF CALIFORNIA**
12

| 13  DANIEL CARLOS GARCIA, | CASE NO. EDCV11-34 VAP (OPx) |
|---|---|
| 14            Plaintiff, | **NOTICE OF MOTION AND MOTION TO DISMISS SECOND** |
| 15  vs. | **AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P.** |
| 16  COUNTY OF RIVERSIDE, et al. | **12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN** |
| 17            Defendants. | **SUPPORT THEREOF** |
| 18 | *[Request for Judicial Notice, Appendix of Cases from Lexis, and Declaration of Robert J. Herrington filed concurrently herewith]* |

DATE:        August 15, 2011
TIME:        2:00 PM
PLACE:       Courtroom 2
JUDGE:       Hon. Virginia A. Phillips

ACTION FILED:  April 15, 2011
TRIAL DATE:    Not Set

TCO 358,938,731v7 118920.011800

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on August 15, 2011, at 2:00 PM in Courtroom 2 of the above-captioned Court, located at 3470 Twelfth Street, Riverside, California 92501, Defendants Global Tel*Link Corporation ("GTL") and Brian Oliver (collectively, the "GTL Defendants") will and hereby do move, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, to dismiss the Second Amended Complaint ("SAC") as to the GTL Defendants and the purported 6th, 10th, and 11th claims for relief therein (erroneously styled in the SAC as "causes of action") that are brought against the GTL Defendants.

This motion is based on the following grounds:

1. The SAC does not state facts sufficient to allege any conspiracy to deprive Plaintiff of the equal protection of the laws or of equal privileges and immunities under the laws, any improper act by the GTL Defendants in furtherance of any alleged conspiracy, or any resulting injury. Therefore, Plaintiff's claim for violation of 42 U.S.C. § 1985(3) brought against the GTL Defendants fails.

2. The SAC does not state facts sufficient to allege that the GTL Defendants are governed by, or in any way violated, California Penal Code § 11149.4. Therefore, Plaintiff's claim for violation of Cal. Penal Code § 11149.4 brought against the GTL Defendants fails.

3. The SAC does not state facts sufficient to allege that the GTL Defendants failed to adequately train or supervise, acted under the color of state law, deprived Plaintiff of any constitutional right, or caused any resulting injury. Therefore, Plaintiff's 42 U.S.C. § 1983 claim, pursuant to a "*Canton*" failure-to-train-or-supervise theory, brought against the GTL Defendants fails.

This motion is based on this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and Declaration of Robert J. Herrington, the pleadings and other matters on file in this action, any oral argument

TCO 358,938,731v7 118920.011800

that the Court may entertain at the hearing, and upon such other and further matters as may come before the Court.

This Motion is made following the meet-and-confer of counsel pursuant to L.R. 7-3, which took place on June 14, 2011. Counsel for the GTL Defendants sent Plaintiff's counsel a detailed e-mail stating the grounds for this Motion, to which Plaintiff's counsel did not reply before this Motion was filed. Prior to June 14, the parties met and conferred verbally several times to discuss these same issues, which have not been remedied by Plaintiff's Second Amended Complaint.

DATED:  June 20, 2011                    GREENBERG TRAURIG, LLP


                                         By:  /s/ Robert J. Herrington
                                              Robert J. Herrington
                                              Attorneys for Defendants Global Tel*Link
                                              Corporation and Brian Oliver

TCO 358,938,731v7 118920.011800

# **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT.................................................................................1

II.   ALLEGATIONS OF THE SECOND AMENDED COMPLAINT .............................3

  A.   The Parties. ................................................................................................................3

  B.   GTL's Secure Phone System. ...................................................................................4

  C.   Plaintiff Claims That His Allegedly Confidential/Privileged Phone Calls From Jail Were Improperly Recorded By The County. ...........................................................4

III.   LEGAL STANDARD FOR A MOTION TO DISMISS .........................................6

IV.   ARGUMENT..........................................................................................................7

  A.   The Sixth "Cause of Action" Fails to State Facts Sufficient to Allege a Violation of 42 U.S.C. § 1985(3).....................................................................................................7

    1.   The SAC does not allege any conspiracy to deprive Plaintiff of equal protection under the laws. ...................................................................................................8

    2.   The SAC does not allege any wrongful acts by the GTL Defendants in furtherance of any conspiracy. ..........................................................................10

      a.   No improper conduct by the GTL Defendants is alleged.................................10

      b.   There is no violation of the California Penal Code. ........................................11

    3.   The SAC does not allege any resulting injury from any supposed conspiracy. ..14

  B.   The Tenth "Cause of Action" Fails to State Facts Sufficient to Allege any Violation of California Penal Code § 11149.4. ...........................................................15

  C.   The Eleventh "Cause of Action" Fails to State Facts Sufficient to Allege any Claim For "Failure to Train and/or Supervise"...................................................................17

    1.   The GTL Defendants were not acting under color of state law...........................18

      a.   Public Function:  The GTL Defendants did not perform  a public function....19

      b.   State Compulsion:  The GTL Defendants were not compelled by the state to do anything. ......................................................................................................20

      c.   Nexus:  There is no sufficiently close nexus between the GTL Defendants and the state. ..........................................................................................................20

i

TCO 358,938,731v7 118920.011800

     d.   Joint Action:  There is no sufficient joint action by the GTL Defendants with the state. ..................................................................................................20

  2.  Plaintiff has not suffered any deprivation of a Constitutional right. ...................20

     a.   There is no First Amendment "due process" violation. ...................21

     b.   There is no Fourth Amendment violation.........................................22

     c.   There is no Sixth Amendment violation...........................................22

     d.   There is no Fifth or Fourteenth Amendment violation.....................23

  3.  There is no resulting injury. ................................................................24

V.  CONCLUSION ...............................................................................................25

NOTICE OF MOTION AND MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Cases**

*Aguilera v. Baca*, 510 F.3d 1161 (9th Cir. 2007) ............................................................ 23

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 119 S. Ct. 977,

     143 L. Ed. 2d 130 (1999) .................................................................................... 18

*Arnold v. Tiffany*, 487 F.2d 216 (9th Cir. 1973) ............................... 8, 9, 10, 11, 14

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................. 6, 19, 22

*Associated Gen. Contractors of Calif. v. Cal. State Council of Carpenters*,

     459 U.S. 519, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983) ............................................ 6

*Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998) .................................................. 24

*Barry v. Fowler*, 902 F.2d 770 (9th Cir. 1990) ............................................................ 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955,

     167 L. Ed. 2d 929 (2007) ............................................................................ 6, 19, 22

*Bova v. City of Medford*, 564 F.3d 1093 (9th Cir. 2009) .............................................. 24

*Buckheit v. Dennis*, 713 F. Supp. 2d 910 (N.D. Cal. 2010) ............................................ 9

*Burns v. County of King*, 883 F.2d 819 (9th Cir. 1989) ............................................... 8

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S. Ct. 1197,

     103 L. Ed. 2d 412 (1989) .................................................................................... 18

*Forest E. Olson, Inc. v. Super. Ct.*, 63 Cal. App. 3d 188,

     133 Cal. Rptr. 573 (1976) ................................................................................... 12

*George v. Pacific-CSC Work Furlough*, 91 F.3d 1227 (9th Cir. 1996) ..................... 19, 20

*Griffin v. Breckenridge*, 403 U.S. 88, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971) ................ 9

*Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001) ........................................ 21

*Jackson v. Metro. Edison Co.*, 419 U.S. 345, 95 S. Ct. 449,

     42 L. Ed. 2d 477 (1974) ..................................................................................... 19

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95,

     45 Cal. Rptr. 3d 730 (2006) ................................................................................ 12

*Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764 (9th Cir. 1991) ............. 7

*Los Angeles v. Heller*, 475 U.S. 796, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986) ............. 21

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130,

    119 L. Ed. 2d 351 (1992) ......................................................................... 18, 24

*Mabry v. Super. Ct.*, 185 Cal. App. 4th 208, 110 Cal. Rptr. 3d 201 (2010) ..................... 13

*McCarther v. Pac. Telesis Group*, 48 Cal. 4th 104, 105 Cal. Rptr. 3d 404 (2010) .......... 13

*McGinnis v. County of Fresno*, No. CV-F-08-542 OWW, 2008 WL 4348000

    (E.D. Cal. Sept. 22, 2008) ......................................................................... 22

*MGIC Indem. Corp. v. Weisman*, 803 F.2d 500 (9th Cir. 1986) ........................................ 3

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018,

    56 L. Ed. 2d 611 (1978) ........................................................................... 17

*Nakao v. Rushen*, 542 F. Supp. 856 (N.D. Cal. 1982) .................................................. 9, 11

*Ove v. Gwinn*, 264 F.3d 817 (9th Cir. 2001) ................................................................ 11

*People v. Windham*, 145 Cal. App. 4th 881, 51 Cal. Rptr. 3d 884 (2006) ................. 12, 22

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007) ............................ 6

*Peruta v. County of San Diego*, 758 F. Supp. 2d 1106 (S.D. Cal. 2010) ......................... 11

*Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S. Ct. 2764,

    73 L. Ed. 2d 418 (1982) ....................................................................... 19, 20

*Scheeler v. City of St. Cloud*, 402 F.3d 826 (8th Cir. 2005) ............................................ 11

*Smith v. Phillips*, 455 U.S. 209, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982) ....................... 24

*Steele v. County of San Bernardino*, CV 03-05774-PA (VBK),

    2009 U.S. Dist. LEXIS 125000 (C.D. Cal. Oct. 28, 2009) .................................... 12

*Steele v. County of San Bernardino*, CV 03-05774-PA (VBK),

    2010 U.S. Dist. LEXIS 12990 (Feb. 12, 2010) ............................................... 12

*United States v. Goldstein*, 532 F. 2d 1305 (9th Cir. 1976) ............................................ 19

*United States v. Hernandez*, 937 F.2d 1490 (9th Cir. 1991) ........................................... 23

*Wells v. Bd. of Trustees of Cal. State Univ.*, 393 F. Supp. 2d 990,

    (N.D. Cal. 2005) ............................................................. 8, 9, 10, 11, 14

*Williams v. Woodford*, 384 F.3d 567 (9th Cir. 2002) ..................................................... 23

NOTICE OF MOTION AND MOTION TO DISMISS

## **Statutes**

42 U.S.C. § 1983 .................................................................................. 17, 25

42 U.S.C. § 1985(3) ...................................................................... 7, 8, 9, 14, 17

1982 Cal. Stat. 4518, 4519, 4520 .......................................................... 16

Cal. Penal Code § 11145 ......................................................................... 16

Cal. Penal Code § 11146 ......................................................................... 16

Cal. Penal Code § 11147 ......................................................................... 16

Cal. Penal Code § 11148 ......................................................................... 16

Cal. Penal Code § 11149 ......................................................................... 16

Cal. Penal Code § 11149.1 ....................................................................... 16

Cal. Penal Code § 11149.2 ....................................................................... 17

Cal. Penal Code § 11149.3 ....................................................................... 17

Cal. Penal Code § 11149.4 ............................................................. 7, 15, 17

Cal. Penal Code § 632 .............................................................................. 13

Cal. Penal Code § 636 ................................................................... 10, 11, 13

NOTICE OF MOTION AND MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PRELIMINARY STATEMENT

Plaintiff, a detainee being held in Riverside County jail on charges of murder, has now had three chances to try to state a claim against Defendants Global Tel*Link Corporation ("GTL") and its CEO, Brian Oliver (together, the "GTL Defendants"). He has failed to do so, and his claims should be dismissed with prejudice.

GTL is a telephone company that provides phone service to the jail that is housing Plaintiff. The original Complaint in this case alleged various civil rights violations by the various government defendants, and it also attempted to assert sixteen meritless "causes of action" against the GTL Defendants. After extensive meet-and-confer discussions, Plaintiff agreed to amend. Plaintiff then filed his First Amended Complaint, which was equally meritless, bringing eleven "causes of action" against the GTL Defendants. (Docket No. 13). After further meet-and-confer discussions, Plaintiff again agreed to amend by dropping certain claims, theories, and parties. Now, Plaintiff has filed a Second Amended Complaint (the "SAC"), which brings a total of twelve "causes of action"—but only three of which are asserted against the GTL Defendants.

The gravamen of Plaintiff's three claims against the GTL Defendants is that his allegedly privileged phone calls placed from jail were monitored and recorded by jail personnel. Of course, GTL is not the jail; it is simply a vendor that was contracted by the County to install and provide technical support for the secure phone system in the jail (County employees are actually the ones allegedly responsible for operating the system). Regardless, recording an inmate's calls is a well-accepted and constitutional practice in jails and prisons, and Plaintiff even concedes that automated recordings notified him that the calls were being recorded. Ignoring the great weight of law permitting the recording of inmate phone calls, Plaintiff nonetheless attempts to assert that the GTL Defendants are liable for:

*TCO 358,938,731v7 118920.011800*

(i)   a supposed conspiracy to somehow deny him equal protection (Sixth "Cause of Action");

(ii)  an alleged violation of a California Penal Code statute that deals with performing background checks—not with recording phone calls (Tenth "Cause of Action"); and

(iii) an alleged failure to supervise or train that somehow led to unspecified civil rights violations (Eleventh "Cause of Action").

As shown below, none of these three remaining claims has any substance or merit. Each relies on mere legal conclusions, speculation, and argument, without any supporting facts.   What few facts are alleged actually undermine Plaintiff's claims, including Plaintiff's acknowledgment that an automated recording notified him that calls were being recorded.   On top of that, the GTL Defendants ask the Court to take judicial notice of the finding by the judge handling Plaintiff's criminal case that the prosecution did not listen to any of Plaintiff's allegedly privileged phone calls, and that Plaintiff has suffered no prejudice, a point Plaintiff also admits in the SAC.

Ultimately, each of the three claims against the GTL Defendants fail on their face for multiple independently sufficient reasons:

- The purported conspiracy claim (Sixth "Cause of Action") fails because, setting aside that it alleges only bare legal conclusions, the SAC does not allege (i) the existence of any conspiracy to deny Plaintiff equal protection, (ii) any act by GTL in furtherance of a conspiracy, or (iii) any resulting injury.

- The Penal Code claim (Tenth "Cause of Action") fails because the statute Plaintiff relies on does not apply to the GTL Defendants or this case.  Indeed, the statute Plaintiff cites only applies to vendors providing background checks to certain state entities, making it completely inapplicable to this case.

- Finally, the failure-to-supervise claim (Eleventh "Cause of Action") fails because, setting aside that it alleges only bare legal conclusions, rather than

2

NOTICE OF MOTION AND MOTION TO DISMISS

TCO 358,938,731v7 118920.011800

facts, the SAC fails to state any facts showing that the GTL Defendants (i) were acting under color of state law, (ii) deprived Plaintiff of any constitutional right, or (iii) caused Plaintiff any injury.

All told, the SAC represents nothing more than Plaintiff's misguided frustration at being unable to escape the reality of his present situation: sitting in jail and awaiting trial on the most serious of criminal charges while two of his co-defendants already have been convicted. Now, having had the chance to "vent" through his various amended complaints, Plaintiff's meritless claims should be dismissed.

The GTL Defendants respectfully request the Court grant this Motion and dismiss them from this case.

## II.   ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

Plaintiff cannot cobble together any set of facts that implicates GTL in any wrongdoing. As shown below, what few facts are alleged in the SAC actually demonstrate why the GTL Defendants do not belong in this case.

### A.   The Parties.

Plaintiff was arrested in 2009 on charges of murder, among other charges, and he has been awaiting trial ever since in the custody of the Riverside Sherriff Department. (SAC, ¶¶ 4, 30, 32; Ex. 1 to the SAC [Plaintiff's "Docket Arrest Sheet"]). Plaintiff's criminal trial is not scheduled to begin until September 2011. (RJN, Ex. 1 [on-line docket]).[1]

Defendant GTL is a Delaware corporation that manufactures, maintains, and provides technical support for secure phone systems installed in jails. (SAC, ¶ 15).

---

[1]   The Court may properly consider judicially noticed matters on a motion to dismiss. *See, e.g., MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) ("On a motion to dismiss, we may take judicial notice of matters of public record outside the pleadings.").

TCO 358,938,731v7 118920.011800

1    Defendant Brian Oliver is alleged to be the CEO of GTL; there are no additional facts

2    alleged in the entire SAC about Mr. Oliver.  (SAC, ¶ 17).

3        Plaintiff also sued the County of Riverside, the Sheriff, the Deputy District

4    Attorney prosecuting Plaintiff's criminal case, and various other County employees.  The

5    SAC refers to those defendants as the County Defendants.

6    **B.    GTL's Secure Phone System.**

7        The SAC alleges that, pursuant to a contract between GTL and the County of

8    Riverside, GTL provided its secure phone system to the Riverside jail where Plaintiff

9    was detained.  (SAC, ¶¶ 16, 31).  Plaintiff also alleges that GTL provides the "technical

10   support" for the phone system.  (SAC, ¶ 16).

11       The secure phone system generally records jail phone calls between detainees and

12   third parties, but the recording is not done in secret.  As the SAC acknowledges,

13   whenever a call is being recorded, <u>an automated message informs those on the call that</u>

14   <u>the call is, in fact, being recorded</u>.  (SAC, ¶ 36).  This automated warning is then

15   <u>replayed every 180 seconds during the call</u>.  (SAC, ¶ 46.a).

16   **C.    Plaintiff Claims That His Allegedly Confidential/Privileged Phone Calls From**

17   **Jail Were Improperly Recorded By The County.**

18       The gravamen of Plaintiff's complaint against the GTL Defendants appears to be

19   that, while in jail, his allegedly confidential/privileged phone calls were recorded and

20   provided to the prosecution in his murder case.  (SAC, ¶¶ 26, 36, 38-41, 43-44, 47-49).

21       However, as a mere vendor selected by the County to provide the jail's secure

22   phone system, it is unclear why the GTL Defendants have been named in this civil rights

23   action.  What is clear from the SAC is that GTL is not the party responsible for the

24   alleged monitoring or recording of phone calls.  (SAC, ¶ 16).  Rather, according to the

25   SAC, "two of Defendant County's employees" were charged with "monitoring,

26   recording, copying and disseminating recorded telephone calls between the detainees and

27   third parties, including lawyers."  (SAC, ¶ 16).  Plaintiff also alleges that "prior to the

28

4

filing of this Second Amended [sic] he discovered that the County Defendants continue to record confidential/privilege telephone communications between Garcia and his defense team in the criminal action." (SAC, ¶ 48). Even accepting these allegations as true, GTL is, by Plaintiff's own admission, a private contractor that did nothing more than provide phone systems and technical support to the county jails. That is not sufficient to state any claim against GTL.

Moreover, although the SAC attempts to impugn the County and the prosecution in Plaintiff's criminal case, the court in that case has already held that Plaintiff has suffered no injury. Specifically, the court held a hearing in Plaintiff's criminal case on Plaintiff's Motion to Dismiss and/or Recuse the District Attorney for Alleged Prosecutorial Misconduct, wherein the court expressly found (i) the DA's Office has <u>not listened to any of the allegedly privileged or confidential phone calls</u>, (ii) there was <u>no prosecutorial misconduct</u>, and (iii) there was <u>no prejudice to Plaintiff</u> resulting from any alleged recording of his phone calls. (RJN, Ex. 2 [Feb. 3, 2011 Court Transcript, 104:1-3, 18-21, 105:14-15, 110:20-22, 111:18-112:16, 116:7-10, 27-28, 120:2-7]).[2]

---

[2] The SAC also includes allegations having nothing to do with the GTL Defendants. For instance, Plaintiff alleges that his jailers seized and searched his privileged documents (SAC, ¶¶ 20-22, 33-34), that two deputies made a comment about how it would be a shame if a dangerous inmate somehow got hold of Plaintiff (SAC, ¶ 25), and that the Superior Court has issued orders prohibiting the County defendants from listening to privileged and confidential calls (SAC, ¶¶ 37, 42).

Additionally, although not even remotely relevant to any claim brought against the GTL Defendants, Plaintiff includes a puzzling allegation that Mr. Kevin McNeil, the alleged custodian of records for GTL, somehow committed perjury in Plaintiff's pre-trial criminal proceedings. Specifically, the SAC alleges that: (i) Mr. McNeil testified the county defendants did not purchase a package from GTL containing the telephone numbers of lawyers registered with the State Bar because it was too expensive; and (ii) Plaintiff supposedly discovered that the county defendants did not pay any money to GTL for installation of the phone system. (SAC, ¶¶ 45, 46.b). Even accepting both allegations as true for purposes of this Motion, Plaintiff's alleged discovery that the county did not pay any money to GTL for installation of the phone system does not

In short, having tried and failed to find a way out from under his serious criminal charges, and having twice tried and failed to cobble together a competent complaint in this lawsuit, Plaintiff now proceeds with his SAC.  But as explained below, the SAC again fails to state any claim against the GTL Defendants.

## III.   LEGAL STANDARD FOR A MOTION TO DISMISS

On a motion brought under Federal Rule of Civil Procedure 12(b)(6), the court should accept properly pled factual allegations as true, but "the court need not accept conclusory allegations of law or unwarranted inferences, and dismissal is required if the facts are insufficient to support a cognizable claim." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929, 940 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice … [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' Fed. Rule Civ. Proc. 8(a)(2)." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-1950, 173 L. Ed. 2d 868 (2009).

Additionally, a court should not assume that a plaintiff could prove facts different from those he has alleged.  *Associated Gen. Contractors of Calif. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S. Ct. 897, 902, 74 L. Ed. 2d 723, 730-31 (1983).  Where a plaintiff already has had multiple chances to amend or where it is apparent that

---

contradict Mr. McNeil's alleged testimony.  It is actually consistent.  It also states no claim for relief.

TCO 358,938,731v7 118920.011800

amendment of a complaint would be futile, it is proper to deny leave to amend. *E.g.,*
*Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 772 (9th Cir. 1991).

### IV.   ARGUMENT

Plaintiff's three remaining claims brought against the GTL Defendants are:

- the Sixth "Cause of Action" for alleged violation of 42 U.S.C. § 1985(3);

- the Tenth "Cause of Action" for alleged violation of Cal. Penal Code § 11149.4; and

- the Eleventh "Cause of Action" for "Failure to Train and/or Supervise (*Canton*)."

As shown, none of these three "causes of action" state any claim against the GTL Defendants.

### A.   The Sixth "Cause of Action" Fails to State Facts Sufficient to Allege a Violation of 42 U.S.C. § 1985(3).

Section 1985(3) was originally part of the Ku Klux Klan Act from the 1800s and was designed to curtail conspiracies to deprive any person of *equal protection* of the laws and equal privileges and immunities under the laws.[3]  Knowing full well that GTL is

---

[3]  The full text of Section 1985(3) provides:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in

*TCO 358,938,731v7 118920.011800*

simply a vendor contracted by Riverside County to install and maintain the jail's phone system, Plaintiff nonetheless brings his Section 1985(3) conspiracy claim in an attempt to "lasso" the GTL Defendants into the same camp as the various government defendants. But Plaintiff's fanciful and conclusory claims of a "conspiracy" cannot survive a motion to dismiss, because the SAC fails to state facts alleging any of the three required elements for such a claim:

> "(1) the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws;
>
> (2) an act in furtherance of the conspiracy; and
>
> (3) a resulting injury."

*Wells v. Bd. of Trustees of Cal. State Univ.*, 393 F. Supp. 2d 990, 996 (N.D. Cal. 2005) (paragraph formatting added); *see also Arnold v. Tiffany*, 487 F.2d 216, 217-218 (9th Cir. 1973).

### 1.   The SAC does not allege any conspiracy to deprive Plaintiff of equal protection under the laws.

Looking beyond Plaintiff's bare conclusions, as the Court is required to do under *Twombly* and *Iqbal*, there are no factual allegations in the SAC to support a claim of a conspiracy to deny Plaintiff of equal protection.   Indeed, the entirety of Plaintiff's conspiracy allegations against the GTL Defendants are that all defendants supposedly "conspired to deprive Garcia of equal protection and/or equal privileges and immunities." (SAC, ¶ 63).   Such a vague and conclusory assertion is insufficient to allege the existence of a conspiracy.   *See Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) ("[Plaintiff's] claims against all the defendants for a conspiracy to violate his

---

his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

TCO 358,938,731v7 118920.011800

constitutional rights under section 1983 also fail because they were supported only by conclusory allegations.  To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy."); *see also Buckheit v. Dennis*, 713 F. Supp. 2d 910, 922 (N.D. Cal. 2010) ("42 U.S.C. § 1985(3) prohibits conspiracies to violate a person's civil rights. To survive a motion to dismiss, the plaintiff must plead specific facts to support the existence of the alleged conspiracy.  Vague and conclusory allegations of a conspiracy are insufficient to state a claim." (citations omitted)).

Even if Plaintiff had alleged facts regarding a conspiracy (which he has not), the SAC still would not state a claim because it does not allege any *equal protection* violation.  Indeed, although Plaintiff alleges he is a homosexual man of Hispanic ethnicity (SAC, ¶¶ 4, 62), he never alleges or even suggests that the defendants treated him any differently because of his membership in that class.  Therefore, Plaintiff has not alleged the first element of a Section 1985(3) claim.  *See Arnold*, 487 F.2d at 218 (affirming dismissal on motion to dismiss:  "'The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101-02, 91 S. Ct. 1790, 1798, 29 L. Ed. 2d 338 (1971)); *see also Wells*, 393 F. Supp. 2d at 996 (granting motion to dismiss Section 1985(3) claim for failure to allege how defendants' actions were "motivated by any racial or class-based discriminatory animus."); *Nakao v. Rushen*, 542 F. Supp. 856, 859 (N.D. Cal. 1982) ("There is no allegation in the complaint that the actions of defendants were the result of a class-based, invidiously discriminatory intent. Plaintiffs have thus failed to state a claim upon which relief can be granted.").

In sum, the Sixth "Cause of Action" should be dismissed because Plaintiff alleges no facts showing any conspiracy and does not allege any equal protection violation.

*TCO 358,938,731v7 118920.011800*

## 2.    The SAC does not allege any wrongful acts by the GTL Defendants in furtherance of any conspiracy.

Even if Plaintiff had alleged facts showing a conspiracy or a violation of equal protection (which he did not), the Sixth "Cause of Action" also fails because it does not allege:  (a) any specific wrongful conduct by the GTL Defendants; or (b) any facts to support the conclusory allegation that defendants violated the California Penal Code.

### a.    No improper conduct by the GTL Defendants is alleged.

To state a claim under Section 1985, Plaintiff must allege facts showing that the GTL Defendants engaged in conduct in furtherance of the supposed conspiracy.  *See Arnold*, 487 F.2d at 217-218; *Wells,* 393 F. Supp. 2d at 996.  The SAC, however, does not allege any such conduct by the GTL Defendants.  Rather, the SAC vaguely alleges that "Defendants"—without specifying which defendants—recorded allegedly confidential phone calls in violation of California Penal Code § 636.[4]  (SAC, ¶ 64.c). The SAC also concedes that certain County Defendants (and not the GTL Defendants) conducted the alleged "monitoring, recording, copying and disseminating recorded telephone calls between the detainees and third parties, including lawyers." (SAC, ¶ 16; *see also* ¶ 48 ("Garcia alleges that prior to the filing of this Second Amended [sic] he discovered that the County Defendants continue to record confidential/privilege [sic] telephone communications … .")).  GTL, in contrast, is merely the manufacturer and vendor for the phone system and provides technical support.  (SAC, ¶¶ 15, 16, 31). Because Plaintiff alleges no act by the GTL Defendants, the Sixth "Cause of Action"

---

[4]  California Penal Code § 636(a) provides:

> Every person who, without permission from all parties to the conversation, eavesdrops on or records, by means of an electronic device, a conversation, or any portion thereof, between a person who is in the physical custody of a law enforcement officer or other public officer, or who is on the property of a law enforcement agency or other public agency, and that person's attorney, religious adviser, or licensed physician, is guilty of a felony.

10

NOTICE OF MOTION AND MOTION TO DISMISS

should be dismissed.  *See Arnold*, 487 F.2d at 217-218; *see also Wells*, 393 F. Supp. 2d at 996; *Nakao*, 542 F. Supp. at 859.

Although the SAC is less than clear, Plaintiff appears to be attempting to rely on an alleged violation of California Penal Code Section 636 to support his Sixth "Cause of Action."  This *state* statute, however, cannot (as a matter of law) serve as the basis for a claimed conspiracy to violate a *federal* civil rights statute.  Indeed, it is black letter law that state law claims are not a legal basis to assert federal civil rights violations.  *See, e.g., Ove v. Gwinn*, 264 F.3d 817, 823-24 (9th Cir. 2001) (affirming dismissal of civil rights claims where plaintiff alleged violation of California Vehicle Code); *see also Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990) (affirming directed verdict for defendant against civil rights claim where plaintiff "failed to allege a *federal* constitutional *or federal* statutory *violation*" (emphasis added)); *Peruta v. County of San Diego*, 758 F. Supp. 2d 1106, 1121 n.12 (S.D. Cal. 2010) ("there is no cause of action under section 1983 for violation of a state statute"); *accord Scheeler v. City of St. Cloud*, 402 F.3d 826, 832 (8th Cir. 2005) ("'alleged violations of state laws, state-agency regulations, and even state court orders do not by themselves state a claim under 42 U.S.C. § 1983.'" (citation omitted)).

### b.   There is no violation of the California Penal Code.

In any event, even if Plaintiff could rely on California Penal Code § 636 (and he cannot), this effort would fail for at least two additional reasons:  (i) Plaintiff impliedly consented to the recording of his phone calls; and (ii) the statute does not apply to those known to be recording a phone call.

**First**, California Penal Code § 636 prohibits only *non-consensual* recording of certain inmate phone calls.  Yet, the SAC concedes that automated recorded messages repeatedly informed Plaintiff (and the other person on his calls) that the phone calls were being monitored and recorded.  (SAC, ¶¶ 36, 46.a.)  By continuing with the phone calls, which Plaintiff admits he *knew were being recorded*, Garcia impliedly consented to the

11

*TCO 358,938,731v7 118920.011800*

recording and cannot complain after the fact. *See Steele v. County of San Bernardino*, CV 03-05774-PA (VBK), 2009 U.S. Dist. LEXIS 125000, at *44-45 (C.D. Cal. Oct. 28, 2009) (holding Penal Code § 636 did not apply where jailed plaintiff was "given advance notice in a form of a prerecorded message advising Plaintiff that his calls would be subject to monitoring and recording"), *Magistrate Judge's recommendation was approved and adopted by U.S. District Judge in* 2010 U.S. Dist. LEXIS 12990, at *1 (Feb. 12, 2010);[5] *cf. Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117-18, 45 Cal. Rptr. 3d 730, 749 (2006) (holding analogous sister-statute, Cal. Penal Code § 632, "does not absolutely preclude a party to a telephone conversation from recording the conversation, but rather simply prohibits such a party from secretly or surreptitiously recording the conversation, that is, from recording the conversation without first informing all parties to the conversation that the conversation is being recorded.  If, after being so advised, another party does not wish to participate in the conversation, he or she simply may decline to continue the communication.  A business that adequately advises all parties to a telephone call, at the outset of the conversation, of its intent to record the call would not violate the provision." (footnotes omitted)); *People v. Windham*, 145 Cal. App. 4th 881, 888, 891, 51 Cal. Rptr. 3d 884, 888, 890 (2006) (finding no violation of California Privacy Act where inmate impliedly consented to recording of phone calls by continuing with the calls despite recorded messages played at the beginning of each call "stating that calls might be monitored and recorded."); *Forest E. Olson, Inc. v. Super. Ct.*, 63 Cal. App. 3d 188, 192, 133 Cal. Rptr. 573 (1976) (sustaining demurrer against analogous claim brought under California Privacy Act, because the cross-complaint failed to allege "that real party did not know that the recording was being made.").

---

[5]  Cognizant of the Court's preference for Westlaw citations, Defendants' counsel attempted to find a parallel citation but was unable to find this case on Westlaw.  We are, however, including a copy of the decision in the concurrently filed Appendix.

TCO 358,938,731v7 118920.011800

**Second**, Plaintiff's attempt to rely on Section 636 also fails because the statutory scheme for the California Privacy Act (Cal. Penal Code §§ 630, *et seq.*), on its face, would not apply to the GTL Defendants.   Section 636 prohibits a "person" from recording certain phone calls without consent, and the term "person" is defined earlier in the same chapter *to exclude* anyone already known to be recording the conversation:

> The term "person" includes an individual, business association, partnership, corporation, limited liability company, or other legal entity, and an individual acting or purporting to act for or on behalf of any government or subdivision thereof, whether federal, state, or local, <u>but excludes an individual known by all parties to a confidential communication to be overhearing or recording the communication</u>.

Cal. Penal Code § 632(b) (emphasis added).  This definition of the term "person," which is found in Section 632 of the Penal Code, applies with equal force to Section 636 of the Penal Code because it appears in the very same chapter on the very same subject, and it is not separately defined in Section 636.  *See McCarther v. Pac. Telesis Group*, 48 Cal. 4th 104, 110, 105 Cal. Rptr. 3d 404, 408-09 (2010) ("[S]tatutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (citations omitted)); *Mabry v. Super. Ct.*, 185 Cal. App. 4th 208, 219, 110 Cal. Rptr. 3d 201, 208 (2010) ("statutes on the same subject matter or of the same subject should be construed together so that all the parts of the statutory scheme are given effect").  Thus, because the definition of "person" specifically excludes anyone known to be recording a call, and because Plaintiff admits in the SAC that he knew the calls were being recorded, the GTL Defendants could not be considered "persons" subject to California Penal Code § 636—or, for that matter, any other statute in the California Privacy Act.

---

TCO 358,938,731v7 118920.011800

In sum, because Plaintiff cannot attribute any specific action to the GTL Defendants, Plaintiff cannot allege any act in furtherance of any conspiracy, and the Sixth "Cause of Action" fails for this additional reason.

### 3.   The SAC does not allege any resulting injury from any supposed conspiracy.

Plaintiff's Sixth "Cause of Action" fails for yet another reason; it does not allege any resulting damage.  Quite the opposite, Plaintiff actually concedes in the Sixth "Cause of Action" that he cannot allege this essential element:

> Garcia alleges that as of the filing of this Second Amended Complaint he is uncertain as to what extent he has been injured, but will seek to amend once ascertained.

(SAC, ¶ 68).  This allegation is insufficient as a matter of law.  Now is the time for Plaintiff to allege all essential elements of his claim—not later.  *See Arnold*, 487 F.2d at 217-218; *Wells*, 393 F. Supp. 2d at 996.  If he has no harm (which he admits), he has no claim, and the SAC should be dismissed.

There is no possibility of Plaintiff being able to amend the SAC to allege an injury, because (aside from this being Plaintiff's third attempt to state a claim) the criminal court already held that the DA's Office has not listened to any of the allegedly privileged and recorded phone calls and there was no prejudice to Garcia resulting from any alleged recording of his phone calls.  (RJN, Ex. 3 [Feb. 3, 2011 Court Transcript, 104:1-3, 18-21, 105:14-15, 110:20-22, 111:18-112:16, 116:7-10, 27-28, 120:2-7]).

In sum, the SAC does not adequately allege any of the three required elements of a Section 1985(3) claim, and Plaintiff's purported Sixth "Cause of Action" should be dismissed with prejudice.

*TCO 358,938,731v7 118920.011800*

**B.**    **The Tenth "Cause of Action" Fails to State Facts Sufficient to Allege any Violation of California Penal Code § 11149.4.**

Plaintiff's Tenth "Cause of Action" is baseless.  It alleges that the GTL Defendants are vendors supposedly governed by California Penal Code § 11149.4, and that their alleged disclosures of certain information to the County Defendants somehow violated this statute.  (SAC, ¶¶ 82-92).[6]  But Section 11149.4 is part of a specific chapter of the Penal Code called "Chapter 1.5 - National Search of Criminal Records"—the sole purpose of which is to protect the youth of California by authorizing certain government agencies that frequently interact with children to conduct background checks on job applicants.[7]  No part of Chapter 1.5, including Section 11149.4, has anything to do with

---

[6]  California Penal Code § 11149.4 provides:

Any vendor or employee of a vendor who intentionally discloses information, not otherwise public, which that person knows or should reasonably know was obtained from confidential information, shall be subject to a civil action for invasion of privacy by the individual to whom the information pertains.

In any successful action brought under this section, the complainant, in addition to any special or general damages awarded, shall be awarded a minimum of two thousand five hundred dollars ($2,500) in exemplary damages as well as attorney's fees and other litigation costs reasonably incurred in the suit.

The right, remedy, and cause of action set forth in this section shall be nonexclusive and is in addition to all other rights, remedies, and causes of action for invasion of privacy, inherent in Section 1, Article I of the California Constitution.

[7]  *See also* the Session Law that enacted Chapter 1.5, which explains the law was necessary to fill a gap left by the Reagan administration when it suspended the FBI's national fingerprinting services:

The Legislature reaffirms its commitment to protecting the youth of California by searching, on a national basis, the criminal records of prospective state and local government employees who will be working with children.  The Legislature recognizes that this national search has, until

---

*TCO 358,938,731v7 118920.011800*

recording or monitoring phone calls or providing telephone service to jails.  Instead, the entire structure of Chapter 1.5 is set forth as follows:

- Section 11145 authorizes certain government agencies to contract with "vendors" to conduct background searches;

- Section 11146, entitled "Application of chapter," specifies which government agencies are authorized under Section 11145 and to which the rest of Chapter 1.5 applies.  Those agencies are the California Commission for Teacher Preparation and Licensing, the State Department of Social Services, and the county welfare department;

- Section 11147 authorizes the agencies specified in Section 11146 to require certain information from job applicants so that a background search can be effective;

- Section 11148 provides the qualifications necessary for any background-search vendor contracting with these state agencies;

- Section 11149 expressly allows for fingerprint checks as part of the background searches;

- Section 11149.1 exempts the background-search vendors from certain provisions of the Civil Code so that they can effectively conduct the background searches;

recently, been conducted using the services of the Federal Bureau of Investigation and that these services have been temporarily suspended by the Reagan administration.  Therefore, the Legislature declares that an alternative system for conducting a national search of criminal records must be established and used until the Federal Bureau of Investigation once again provides such services. … The provisions contained in this act shall remain operative only until the Federal Bureau of Investigation reinstates its national fingerprint services. … This act would provide necessary protection to the youth of the State of California.
1982 Cal. Stat. 4518 sec. 1, 4519 sec. 3, 4520 sec. 5.

16

*TCO 358,938,731v7 118920.011800*

- Section 11149.2 allows the specified agencies to charge the job applicants for the cost of the background search;

- Section 11149.3 prohibits the vendors from furnishing the background reports to unauthorized persons; and,

*finally, the one statute that Plaintiff relies upon for his claim …*

- Section 11149.4 authorizes a civil suit against any background-search vendor who intentionally and improperly discloses information from the background checks.

The GTL Defendants obviously are not "vendors" under this statute and there is no basis to apply California Penal Code § 11149.4 to this case.  Plaintiff's Tenth "Cause of Action" should be dismissed.

**C.**  **The Eleventh "Cause of Action" Fails to State Facts Sufficient to Allege any Claim For "Failure to Train and/or Supervise".**

Plaintiff's last claim against the GTL Defendants also fails as a matter of law. Preliminarily, this claim takes some initial work just to figure out the theory of liability actually being alleged.  Based on the text above Paragraph 93 in the SAC, it appears that Plaintiff is relying upon a specific theory of vicarious liability, whereby, in sum, a municipality can be sued under 42 U.S.C. § 1983 for injuries inflicted by its employees or agents that resulted from the municipality's policy of not training or supervising.

This theory of municipal liability is set forth in the U.S. Supreme Court cases *Monell* and *City of Canton*, and it requires the difficult showing that the municipality was *deliberately indifferent* to the constitutional rights of its citizens.[8]  Such a theory of

---

[8]  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978) ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by

17

liability is, to say the least, a major stretch with respect to the GTL Defendants, who are mere vendors, not responsible for the alleged actions of any government employees. Indeed, Plaintiff alleges no facts to support the unstated assumption that GTL is somehow responsible for the acts of government employees. For this reason alone, the Eleventh "Cause of Action" should be dismissed as to the GTL Defendants.

In addition to this fatal flaw, the SAC also fails for at least three more reasons: (1) the SAC does not allege facts showing that the GTL Defendants were acting under color of state law; (2) even if the GTL Defendants were acting under the color of state law, the SAC does not allege facts showing a deprivation of any Constitutional right; and (3) the SAC does not allege facts showing any injury. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50, 119 S. Ct. 977, 985, 143 L. Ed. 2d 130 (1999) ("To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) ("plaintiff must have suffered an 'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.''" (citations omitted)).

### 1.   The GTL Defendants were not acting under color of state law.

Although the SAC asserts in conclusory fashion that GTL (a private telephone company) and Oliver (an officer of GTL) were acting under color of state law, the SAC alleges no *facts* to support that conclusion. Plaintiff's conclusions do not state any claim

---

those whose edicts or acts may fairly be said to represent  official policy, inflicts the injury that the government as an entity is responsible under § 1983."); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392, 109 S. Ct. 1197, 1206, 103 L. Ed. 2d 412 (1989) (holding inadequacy of police training may serve as a basis for Section 1983 municipal liability "where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants.")

TCO 358,938,731v7 118920.011800

and should be disregarded.  *See, e.g., Twombly*, 550 U.S. at 555; *Iqbal*, 129 S. Ct. at 1949; *see also George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996) ("Individuals bringing actions against private parties for infringement of their constitutional rights … must show that the private parties' infringement somehow constitutes state action.").  The Eleventh "Cause of Action" should be dismissed for this reason alone.

Not only does the SAC fail to allege any facts to show that GTL and Oliver were state actors, Plaintiff's allegations establish that they could not have been state actors. "The Supreme Court has articulated four distinct approaches to the state action question: public function, state compulsion, nexus, and joint action."  *George*, 91 F.3d at 1230. Analyzing each approach in this case leads to the conclusion that the GTL Defendants are not state actors:

### a.    Public Function:  The GTL Defendants did not perform a public function.

Under the "public function" approach, "the relevant question is not simply whether a private group is serving a 'public function,'" but rather "whether the function performed has been 'traditionally the exclusive prerogative of the State.'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 842, 102 S. Ct. 2764, 2772, 73 L. Ed. 2d 418 (1982).  In this case, GTL is alleged to provide phone systems, which does not serve a "public" function—let alone a function that is traditionally the exclusive prerogative of the state.  *See United States v. Goldstein*, 532 F. 2d 1305, 1311 (9th Cir. 1976) ("Although communications carriers may sometimes give the appearance of governmental agencies, they in fact are private companies which possess none of the criteria which might make them responsible under the Fourth Amendment as government bodies."); *see also Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353, 95 S. Ct. 449, 455, 42 L. Ed. 2d 477 (1974) ("the supplying of utility service is not traditionally the exclusive prerogative of the State").

TCO 358,938,731v7 118920.011800

**b.     State Compulsion:  The GTL Defendants were not compelled by the state to do anything.**

"Under the state compulsion approach, a private entity acts as the state when some state law or custom requires a certain course of action."  *George*, 91 F. 3d at 1232.  Here, Plaintiff has not alleged that any statutes or state customs explicitly required the GTL Defendants to do anything alleged in this case.

**c.     Nexus:  There is no sufficiently close nexus between the GTL Defendants and the state.**

Under the nexus approach, a court considers whether the plaintiff's allegations demonstrate sufficiently close state involvement by the defendant.  *George*, 91 F. 3d at 1230-31.  In this case, the only alleged relationship between the GTL Defendants and the state is a contractual relationship (SAC, ¶¶ 16, 31), which is insufficient as a matter of law to establish state action.  *See Rendell-Baker*, 457 U.S. at 841 ("Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts.").

**d.     Joint Action:  There is no sufficient joint action by the GTL Defendants with the state.**

"Under the joint action approach, private actors can be state actors if they are 'willful participants in joint action with the state or its agents.'"  *George*, 91 F.3d at 1231.  However, once again, the only alleged "joint participation" in this case is a contractual relationship (SAC, ¶¶ 16, 31), which does not rise to state action.  *See Rendell-Baker*, 457 U.S. at 841; *see also George*, 91 F.3d at 1231-32 (holding plaintiff's vague allegations of a conspiracy between the defendant and the state were insufficient to allege joint action).

**2.     Plaintiff has not suffered any deprivation of a Constitutional right.**

Even if Plaintiff had alleged that GTL was acting under color of state law (and he has not), the claim still fails because there are no allegations that any employees of the

GTL Defendants violated Plaintiff's constitutional rights.  *See Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573, 89 L. Ed. 2d 806 (1986) (holding that the city defendants were not liable for a police officer's actions if the officer inflicted no constitutional injury on the plaintiff:  "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."; *see also Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001) ("Neither a municipality nor a supervisor, however, can be held liable under § 1983 where no injury or constitutional violation has occurred.").

Indeed, Plaintiff alleges just the opposite.  The SAC concedes that certain *County* employees were the ones allegedly responsible for "monitoring, recording, copying and disseminating recorded telephone calls between the detainees and third parties, including lawyers."  (SAC, ¶ 16; *see also* SAC, ¶ 48 ("Garcia alleges that prior to the filing of this Second Amended [sic] he discovered that the County Defendants continue to record confidential/privilege [sic] telephone communications … .")).  The SAC does not allege that any of the GTL Defendants' employees did anything.

In addition, as shown below, the SAC fails to allege any facts showing that there was a constitutional violation.  Instead of alleging facts, the SAC vaguely refers to unspecified violations of "due process" rights under the 1st, 4th, 5th, and 14th Amendments, as well as unspecified violations of "rights as an accused" under the 4th, 5th, 6th, and 14th Amendments.  (SAC, ¶ 99).  These allegations do not state any claim against the GTL Defendants.

### a.     There is no First Amendment "due process" violation.

Plaintiff fails to allege any violation of a right protected by the First Amendment. Tellingly, there is no allegation that anyone—let alone GTL—prohibited Plaintiff and his

TCO 358,938,731v7 118920.011800

1  attorneys from meeting in private.[9]   There is no allegation that GTL prevented Plaintiff

2  from receiving legal mail from his attorneys.   And there is no allegation that anyone—let

3  alone GTL—prevented Plaintiff from practicing his religion.   Instead, there is only the

4  conclusory allegation that the GTL Defendants somehow violated Plaintiff's "due

5  process" rights under the First Amendment (SAC, ¶ 99), which is a bare (and

6  nonsensical) legal conclusion that must be ignored on a motion to dismiss.   *See, e.g.,*

7  *Twombly*, 550 U.S. at 555; *Iqbal*, 129 S. Ct. at 1949; *see also McGinnis v. County of*

8  *Fresno*, No. CV-F-08-542 OWW, 2008 WL 4348000, at *9-11 (E.D. Cal. Sept. 22, 2008)

9  (granting motion to dismiss plaintiff's claim for alleged violation of the First Amendment

10  based on alleged inability to conduct an unmonitored attorney-client conference in jail).

11  **b.   There is no Fourth Amendment violation.**

12  Because Plaintiff admits that automated recorded messages repeatedly informed

13  those on the calls that they were being monitored and recorded (SAC, ¶¶ 36, 46.a), there

14  could not have been any expectation of privacy, and Plaintiff's actions constituted

15  implied consent.   *See, e.g., People v. Windham*, 145 Cal. App. 4th 881, 886-87, 51 Cal.

16  Rptr. 3d 884, 887 (2006) ("an inmate who uses jail or prison telephones with knowledge

17  of a recording policy impliedly consents to the monitoring and recording of the calls");

18  *see also supra* Section IV.A.2.b.

19  **c.   There is no Sixth Amendment violation.**

20  There could not have been any Sixth Amendment violation because, as shown,

21  Plaintiff had no expectation of privacy and impliedly consented to the recording of the

22  call.   In addition, this claim fails because Plaintiff does not (and cannot) allege any

23

---

24  [9]   Although Plaintiff alleges that he was housed more than 100 miles away from his attorneys, Plaintiff concedes that was only "on occasion."  (SAC, ¶ 24).  In any event,

25  there is no way to tell from the SAC whether Plaintiff, in fact, was represented by counsel on those few occasions that he was housed farther away.  The SAC actually

26  suggests this was a non-issue to begin with, because Plaintiff concedes he has been a

27  "pro se" defendant in his criminal case since May 2010.  (SAC, ¶ 35).

28

22

NOTICE OF MOTION AND MOTION TO DISMISS

resulting prejudice—let alone the *substantial* prejudice required to state a claim. *See Williams v. Woodford*, 384 F.3d 567, 584-85 (9th Cir. 2002) ("When the government deliberately interferes with the confidential relationship between a criminal defendant and defense counsel, that interference violates the Sixth Amendment right to counsel if it substantially prejudices the criminal defendant. Substantial prejudice results from the introduction of evidence gained through the interference against the defendant at trial, from the prosecution's use of confidential information pertaining to defense plans and strategy, and from other actions designed to give the prosecution an unfair advantage at trial." (citations omitted)); *see also United States v. Hernandez*, 937 F.2d 1490, 1493 (9th Cir. 1991) ("Despite the high approbation our system has for the attorney-client privilege, the Supreme Court has twice held that government invasion of that privilege or the defense camp is not sufficient by itself to cause a Sixth Amendment violation. The defendant must have been prejudiced by such actions. Our circuit has also explicitly held that prejudice is required." (citations omitted)).

Nor is there any possibility of Plaintiff being able to amend the SAC to allege substantial prejudice, because the criminal court has already found <u>there was no prejudice to Plaintiff</u>. (RJN, Ex. 2 [Feb. 3, 2011 Court Transcript, 116:7-10, 27-28]).

### d.    There is no Fifth or Fourteenth Amendment violation.

Plaintiff fails to identify which rights "as an accused" under the 5th Amendment he claims were violated. Presumably, Plaintiff is referring to the right against self-incrimination, but that right could not have been violated because he does not allege that any of his recorded phone calls have actually been used against him in Court. *See, e.g., Aguilera v. Baca*, 510 F.3d 1161, 1173 (9th Cir. 2007) ("Only after a compelled incriminating statement is used in a criminal proceeding has an accused suffered the requisite constitutional injury for purposes of a § 1983 action."). To the contrary, the criminal court has already ruled that the prosecution has not listened to the allegedly

TCO 358,938,731v7 118920.011800

privileged calls,[10] and, in any event, Plaintiff's criminal case has not even been tried yet.[11]

There are also no facts alleged to support a claim based on a due-process violation. Nor could there be, because "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial," and Plaintiff has not had his criminal trial—let alone an unfair trial. *See Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940, 947, 71 L. Ed. 2d 78 (1982).

Likewise, as set forth above, there are no facts alleged indicating any denial of equal protection under the laws. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."); *see also supra* Section IV.A.1.

### 3. There is no resulting injury.

Finally, in addition to failing to allege any facts showing that the GTL Defendants are state actors or deprived Plaintiff of any Constitutional right, Plaintiff's claim also fails for the independently sufficient reason that he has no standing without an actual injury. *See Lujan*, 504 U.S. at 560; *see also Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009) ("To have standing, a plaintiff must have suffered an injury in fact that is 'concrete and particularized;' that can be fairly traced to the defendant's action … ." (citing *Lujan*)).  Although the SAC asserts, in conclusory fashion, that Plaintiff "has been damaged as a result" of various unspecified constitutional violations (SAC, ¶ 99), Plaintiff alleges no underlying facts showing how he has suffered any damage.  Such a

---

[10]   RJN, Ex. 2 [Feb. 3, 2011 Court Transcript, 104:1-3, 18-21, 105:14-15, 110:20-22, 111:18-112:16, 116:7-10, 27-28, 120:2-7].

[11]   RJN, Ex. 1 [on-line docket showing a trial date of Sept. 6, 2011).

TCO 358,938,731v7 118920.011800

vague and conclusory allegation cannot support this requirement for standing.   *See*

*Twombly*, 550 U.S. at 555; *Iqbal*, 129 S. Ct. at 1949.

It is also clear that Plaintiff cannot amend the SAC to allege any injury because there has already been an explicit finding of no prejudice against Plaintiff in the criminal court.  (RJN, Ex. 2 [Feb. 3, 2011 Court Transcript, 104:1-3, 18-21, 105:14-15, 110:20-22, 111:18-112:16, 116:7-10, 27-28, 120:2-7]).  Plaintiff even confirms that he is "uncertain as to what extent he has been injured" from the alleged recording of phone calls.  (SAC, ¶ 68).  Simply put, Plaintiff has no standing to allege a Section 1983 claim.

Because the SAC fails to adequately allege that the GTL Defendants acted under color of state law, deprived Plaintiff of any constitutional right, or caused any injury, Plaintiff's purported Eleventh "Cause of Action" should be dismissed as to the GTL Defendants.

## V.   **CONCLUSION**

For all the foregoing reasons, the GTL Defendants respectfully request the Court grant this Motion and dismiss the SAC without leave to amend as to the GTL Defendants.

DATED:  June 20, 2011                    GREENBERG TRAURIG, LLP


                                          By:  */s/ Robert J. Herrington*
                                               Robert J. Herrington
                                               Attorneys for Defendants Global Tel*Link
                                               Corporation and Brian Oliver

TCO 358,938,731v7 118920.011800