GREENBERG TRAURIG, LLP
ROBERT J. HERRINGTON (SBN 234417)
herringtonr@gtlaw.com
MATTHEW R. GERSHMAN (SBN 253031)
gershmanm@gtlaw.com
2450 Colorado Avenue, Suite 400E
Santa Monica, California  90404
Telephone: (310) 586-7700
Facsimile: (310) 586-7800

Attorneys for Defendants
GLOBAL TEL*LINK CORPORATION and
BRIAN OLIVER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL CARLOS GARCIA,<br><br>              Plaintiff,<br><br>vs.<br><br>COUNTY OF RIVERSIDE, et al.<br><br>              Defendants. | CASE NO. EDCV11-34 VAP (OPx)<br><br>**APPENDIX OF CASES FROM LEXIS IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>*[Motion to Dismiss, Request for Judicial Notice, and Declaration of Robert J. Herrington filed concurrently herewith]*<br><br>DATE:      August 15, 2011<br>TIME:       2:00 PM<br>PLACE:    Courtroom 2<br>JUDGE:    Hon. Virginia A. Phillips<br><br>ACTION FILED: April 15, 2011<br>TRIAL DATE:    Not Set |

1
APPENDIX IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT
TCO 359,055,976 v.1  118920-011800

Defendants Global Tel*Link Corporation and Brian Oliver hereby submit this appendix of the following opinions (attached hereto), which are available on Lexis:

- *Steele v. County of San Bernardino*, CV 03-05774-PA (VBK), 2009 U.S. Dist. LEXIS 125000 (C.D. Cal. Oct. 28, 2009)
- *Steele v. County of San Bernardino*, CV 03-05774-PA (VBK), 2010 U.S. Dist. LEXIS 12990 (Feb. 12, 2010)

DATED:  June 20, 2011              GREENBERG TRAURIG, LLP

                                   By: */s/ Robert J. Herrington*
                                      Robert J. Herrington

                                   Attorneys for Defendants Global Tel*Link Corporation and Brian Oliver



TEJAY STEELE, Plaintiff, v. COUNTY OF SAN BERNARDINO, Defendant.

No. CV 03-05774-PA (VBK)

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

2009 U.S. Dist. LEXIS 125000

October 28, 2009, Decided
October 28, 2009, Filed

**SUBSEQUENT HISTORY:** Adopted by, Approved by, Summary judgment granted by, Summary judgment denied by, Judgment entered by, Complaint dismissed at Steele v. County of San Bernardino, 2010 U.S. Dist. LEXIS 12990 (C.D. Cal., Feb. 12, 2010)

**COUNSEL:** [*1] Tejay Steele, Plaintiff, Pro se, Corcoran, CA.

For County of San Bernardino, Defendant: James H Thebeau, LEAD ATTORNEY, San Bernardino County Counsel, San Bernardino, CA.

**JUDGES:** VICTOR B. KENTON, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** VICTOR B. KENTON

**OPINION**

AMENDED REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This Amended Report and Recommendation is submitted to the Honorable Percy Anderson, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

*PROCEEDINGS*

Pro se Plaintiff Tejay Steele (hereinafter referred to as "Plaintiff") filed a "Civil Rights Complaint Pursuant to 42 U.S.C. § 1983" on August 13, 2003. On September 15, 2003, Plaintiff filed a "Motion for United States Marshal, Deputy Marshal, or an Officer Appointed by the Court to Serve Upon Defendants the Summons" and a Complaint which the Court has construed as a Memorandum in Support of Plaintiff's Complaint. On December 9, 2003, Defendant County of San Bernardino filed a "Notice of Motion and Motion to Dismiss Plaintiff's First Amended Complaint [sic] Pursuant to F.R.C.P. 12(b)6; Points and Authorities in Support Thereof."

On January [*2] 12, 2004, Plaintiff filed a document entitled "Notice of Motion: Motion to Quash; Defendant(s) Motion to Dismiss (Points and Authorities)."

On January 26, 2004, the Court issued a Report and Recommendation denying Defendant's Motion to Dismiss and ordering Defendant to file an Answer to the Complaint.

On February 26, 2004, United States District Judge Dale S. Fischer issued an order adopting the Report and Recommendation, denying Defendant's motion to dismiss and motion for a more definite statement and ordered Defendant to file an Answer to the Complaint.

On March 15, 2004, Defendant filed an Answer.

On August 16, 2004, the matter was transferred from United States District Judge Dale S. Fischer to United States District Judge George P. Schiavelli.

On October 27, 2004, Defendant filed a "Motion for Summary Judgment; Points and Authorities in Support Thereof;" "Separate Statement of Undisputed Facts in Support of Motion for Summary Judgment;" "Declaration of Tristan G. Pelayes;" and "[Proposed] Order."

On October 29, 2004, the Court issued a Minute Order outlining the procedure to be used in filing an Opposition to a Motion for Summary Judgment pursuant to *Rand v. Rowland,* 154 F.3d 952, 960 (9th Cir. 1998).

On [*3] December 3, 2004, Plaintiff filed documents entitled "[Proposed] Order Denying Defendant's Motion for Summary Judgment And/or Adjudication;" "Statement of Genuine Issues in Opposition to Motion for Summary Judgment And/or Adjudication;" "Objection to Defendant's Evidence;" and "Opposition and Memorandum of Points and Authorities Supporting Denial of Summary Judgment."

On December 23, 2004, Defendant filed documents entitled "Defendant's Response to Plaintiff's Objection to Defendant's Evidence" and "Defendant's Reply to Plaintiff's Opposition and Points and Authorities Supporting Denial of Summary Judgment."

On December 28, 2004, Plaintiff filed documents entitled "Plaintiff's Notice of Counter Motion for Summary Adjudication and Judgment;" "Memorandum of Points and Authorities in Support of Plaintiff's Counter Motion for Summary Adjudication;" "Plaintiff's Declarations to Exhibits;" and "Plaintiff's Statement of Uncontested Facts and Conclusions of Law Supporting Summary Judgment."

On January 4, 2005, the Court issued a Minute Order outlining the procedures to be used by Defendant in filing an Opposition to Plaintiff's Motion for Summary Adjudication and Judgment.

On January 31, 2005, [*4] Defendant filed an "Opposition to Plaintiff's Counter Motion for Summary Adjudication and Judgment."

On February 11, 2005, Plaintiff filed a document entitled "Plaintiff's Reply to Defendant's Opposition to Summary Adjudication and Judgment."

On September 30, 2005, the Court issued a Report and Recommendation recommending that Defendant's Motion for Summary Judgment be granted, that Plaintiff's Counter-Motion for Summary Judgment be denied and that Plaintiff's Complaint be dismissed.

On October 25, 2005, Plaintiff filed Objections to the Report and Recommendation. Plaintiff alleged that he was denied the ability to confidentially communicate with his attorney, while others within the same detention facility were permitted such daily confidential telephonic contact, thereby violating Plaintiff's rights under the Equal Protection Clause.

On November 7, 2005, Defendant filed a document entitled "Response to Plaintiff's Objection to Report and Recommendation of United States Magistrate Judge."

On February 27, 2006, Plaintiff filed a document entitled "Motion for Judicial Notice; Motion to Postpone All Summary Judgment Decisions; Motion for Plaintiff to Conduct Further Discovery."

On March 21, [*5] 2006, Plaintiff filed documents entitled "Plaintiff's Notice of Motion; Motion to Modify Court Scheduling Order; Plaintiff's Motion for Leave of Court to Amend Pleadings;" "Plaintiff's [Proposed] First Amended Complaint;" and "Plaintiff's Declaration as to Exhibits."

On April 11, 2006, Defendant filed an "Opposition of County of San Bernardino to Motion for Judicial Notice; Motion to Postpone All Summary Judgment Proceedings; Motion to Conduct Further Discovery;" and "Opposition to Plaintiff's Motion to Modify Scheduling Order and Motion for Leave to Court to Amend Pleadings."

On May 1, 2006, Plaintiff filed a document entitled "Reply of Plaintiff to Defendant's Opposition to Plaintiff's Motion to Modify Court Order and Motion for Leave of Court to Amend Pleadings." [1]

> 1  The Court will address Plaintiff's Motion for Leave to Amend *infra.*

On June 21, 2006, the Court issued a Minute Order granting the parties time to conduct additional discovery on Plaintiff's Fourteenth Amendment equal protection claim pursuant to Fed.R.Civ.P. Rule 56(f) and extending the discovery cut-off date. Parties were ordered to file

supplemental briefs by October 16, 2006.

On November 20, 2006, Defendant filed a "Supplemental [*6] Brief re Equal Protection Claims; Declarations of Blankenship and Precup; Exhibits 'A' to 'E.'"

On December 26, 2006, Plaintiff filed an "Opposition to Defendant's Supplemental Brief re Equal Protection Claim."

On March 27, 2007, Plaintiff filed a "Request for Judicial Notice and Plaintiff's Supplemental Brief in Opposition to Defendant's Motion for Summary Judgment."

On September 16, 2008, the matter was transferred from United States District Judge George B. Schiavelli to United States District Judge Percy Anderson.

Having reviewed the allegations in the Complaint, Defendant's Motion for Summary Judgment, Plaintiff's Opposition, Defendant's Reply, Plaintiff's Cross-Motion for Summary Adjudication and Judgment, Defendant's Opposition to Cross-Motion for Summary Judgment, Plaintiff's Reply, and Defendant's and Plaintiff's Supplemental Briefs, the Court hereby recommends that Defendant's Motion for Summary Judgment be granted, Plaintiff's Motion for Summary Judgment be denied, and Plaintiff's Complaint be dismissed.

### *PLAINTIFF'S MOTION FOR LEAVE TO AMEND*

On March 21, 2006, Plaintiff filed a document entitled "Notice of Motion; Motion to Modify Scheduling Order; Plaintiff's Motion for Leave [*7] of Court to Amend Pleadings" and a "Proposed First Amended Complaint." Plaintiff's proposed First Amended Complaint seeks to add additional causes of action under 18 U.S.C. § 2510, *et seq.,* California Penal Code § 636 and California Evidence Code §§ 952 and 954.

On April 11, 2006, Defendant filed an "Opposition to Plaintiff's Motion to Modify Court Scheduling Order and Motion for Leave of Court to Amend Pleadings." Defendant contends that Plaintiff's Motion for Leave of Court to Amend Pleadings was filed in bad faith, is futile and is an attempt to circumvent summary judgment and the Proposed First Amended Complaint and sets forth no facts constituting a claim.

On May 1, 2006, Plaintiff filed a "Reply to Defendant's Opposition to Plaintiff's Motion to Modify Court Scheduling Order and Motion for Leave of Court to Amend Pleadings."

Federal Rule of Civil Procedure 15(a) provides that leave of court shall be freely given when justice so requires. However, leave to amend should not be permitted when amendment would cause undue prejudice to the parties, was sought in bad faith, or would be futile. *See Schlacter-Jones v. General Telephone,* 936 F.2d 435, 443 (9th Cir. 1991)("A motion for leave [*8] to amend is not a vehicle to circumvent summary judgment."), *overruled on other grounds* by *Cramer v. Consolidated Freightways, Inc.,* 255 F.3d 683, 692 (9th Cir. 2001). *See also Cowen v. Bank United of Texas, FSB,* 70 F.3d 937, 944 (7th Cir. 1995)("A plaintiff who proposes to amend his complaint after the defendant has moved for summary judgment may be maneuvering desperately to stave off the immediate dismissal of his case.") Applying the standards used when considering a motion under Rule 12(b)(6), Plaintiff's proposed amended pleading must fail as a matter of law.

Plaintiff claims that Defendant's recording of his calls from jail to his counsel violated 18 U.S.C. §§ 2510-2522, known formally as Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended. *See United States v. Moore,* 452 F.3d 382, 386 n.2 (5th Cir. 2006). The Federal Wiretap Act ("FWA") in general terms "forbids the intentional interception of wire communications, such as telephone calls, when done without court-ordered authorization." *United States v. Faulkner,* 439 F.3d 1221, 1223 (10th Cir. 2006)(quoting *United States v. Workman,* 80 F.3d 688, 692 (2nd Cir. 1996). 18 U.S.C. § 2511 makes it unlawful [*9] for any person to "(a) intentionally intercept [] ... any wire, oral, or electronic communication; (b) intentionally use [] ... any electronic, mechanical, or other device to intercept any oral communication ...; [or] (c) intentionally disclose [] ... to any other person the contents of any wire, oral or electronic communication ... obtained through the interception of a wire, oral, or electronic communication in violation of this subsection..." 18 U.S.C. § 2511(1)(a)-(c). "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

The FWA applies to prisons and jails. *United States v. Hammond,* 286 F.3d 189, 192 (4th Cir.

2002)("Although the argument has been made that Title III was not intended by Congress to apply to prisons, it is well accepted that its protections do apply to that context."). However, the FWA provides several exceptions to the general rule against wiretapping, listing specific circumstances under which the interception, use, or disclosure of wire communications is allowed. *See, e.g.,* 18 U.S.C. § 2511(2).

As the Ninth Circuit has already **[*10]** held, the routine recording of telephone calls from jail inmates is not unlawful under the FWA. *United States v. Van Poyck,* 77 F.3d 285, 291 (9th Cir. 1996). Rather, such routine recordings fall within two separately enumerated exceptions to the ban on wiretapping: the "law enforcement" exception of subsection 2510(5)(a)(ii), and the "consent" exception of subsection 2511(2)(c). *Van Poyck,* 77 F.3d at 291-92.

Under the "law enforcement" exception, "oral communications may be intercepted by investigative and law enforcement officers acting in the ordinary course of their duties." *Id.* at 291. Under the "consent" exception "[w]hen one party consents to a tap, Title III is not violated ... Consent may be express or may be implied in fact from 'surrounding circumstances indicating that the [defendant] knowingly agreed to the surveillance.'" *Id.* at 292 (quoting *United States v. Amen,* 831 F.2d 373, 378 (2nd Cir. 1987)).

Numerous other courts have reached the same conclusion as the Ninth Circuit, relying on either or both of these exceptions to hold that prisons can routinely record and monitor telephone calls placed by inmates. *See, e.g., Moore,* 452 F.3d at 386 (upholding District Court's denial **[*11]** of motion to suppress recordings of telephone conversations from prison because inmate consented to taping); *Faulkner,* 439 F.3d at 1224 (upholding admission of recordings of prison telephone conversations under consent exception); *United States v. Lewis,* 406 F.3d 11, 19 (1st Cir. 2005)(holding that "recording made pursuant to a routine practice of monitoring all outgoing inmate calls under a documented policy of which inmates are informed does not constitute an interception for Title III purposes."); *Hammond,* 286 F.3d at 192 (holding that both "law enforcement" and "consent" exceptions allow Bureau of Prisons to routinely tape inmates' telephone conversations); *Smith v. U.S. Dept. of Justice,* 251 F.3d 1047, 1049-1050, 346 U.S. App. D.C. 232 (D.C. Cir. 2001)(holding that recordings of conversations between inmate and his attorney fell within "law enforcement" exception, and therefore were not "interceptions" under the FWA); *Workman,* 80 F.3d at 693-694 (upholding District Court's admission of recordings of prisoner calls under "consent" exception); *United States v. Horr,* 963 F.2d 1124, 1126 (8th Cir. 1992) (upholding admission of routinely recorded prisoner calls under "consent" exception); *United States v. Paul,* 614 F.2d 115, 117 (6th Cir. 1980)(upholding **[*12]** District Court's denial of motion to suppress routinely monitored prison calls, relying on both "law enforcement" and "consent" provisions); *see also People v. Windham,* 145 Cal.App.4th 881, 886, 51 Cal. Rptr. 3d 884 (Cal. Ct. App. 2006)(noting that "[e]very federal circuit court to address the issue has concluded that Title III is not violated when a jail or prison routinely monitors and records outgoing calls placed by inmates on the institution's telephones and the inmates are put on notice of the recording policy").

Plaintiff argues that no exception of the FWA applies to interception of attorney-client conversations. (Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Modify Court Order and Motion for Leave of Court to Amend Pleadings at pp. 4-6.) While communications between lawyers and their clients are subject to a number of protections, Plaintiff has pointed to nothing in the FWA to indicate that the interception of wire communications under circumstances not otherwise prohibited under the FWA becomes actionable just because the intercepted communications are between an attorney and a client.

The language of the statute does not differentiate based on the content of the communications **[*13]** at issue. 18 U.S.C. § 2511(2)(c) simply provides that if one party has consented to wiretapping, that consent makes wiretapping by certain individuals lawful, without reference to who the parties are, or what they may discuss during any intercepted communications. This section provides that once a party consents to wiretapping of a call, that call may be monitored and recorded.

Plaintiff argues that the consent exception may protect routine monitoring of prison calls in general; however, it provides no protection to a defendant's action under the particular circumstances here. While consent to wiretapping may be lawful, Plaintiff claims he did not in fact consent. However, someone who is told that his telephone conversation "may" be recorded, but who

nonetheless places his call, cannot be heard to complain if his call is in fact recorded. "[I]t is generally accepted that a prisoner who places a call from an institutional phone with knowledge that the call is subject to being recorded has impliedly consented to the recording." *Faulkner,* 439 F.3d at 1222-23 (holding that inmate impliedly consented to recording in light of warnings that telephone conversations "could be" recorded, "may [*14] be monitored and/or recorded," and "are subject to recording and monitoring.") "When an inmate has repeatedly received notice that calls placed on prison telephones are subject to surveillance, the evidence indicates that he is in fact aware of the monitoring program and he nevertheless uses the telephones, by that use he impliedly consents to be monitored for purposes of Title III." *Workman,* 80 F.3d at 693.

Given the clear applicability of the consent exception, Plaintiff is not entitled to damages under 18 U.S.C. § 2510, *et seq.* As noted, Plaintiff's proposed First Amended Complaint, containing a claim under 18 U.S.C. § 2510, *et seq.,* would be barred. Secondly, Plaintiff in his Proposed Amended Complaint alleges a cause of action under Penal Code § 636; however, Plaintiff had no expectation of privacy as the prerecording clearly advised Plaintiff that his conversation was being monitored and recorded. Nor do Plaintiff's references to Evidence Code §§ 952 and 954 provide Plaintiff with a constitutional claim entitling him to relief. Thus, the proposed amendments contained in the Proposed First Amended Complaint would be futile.

Where the proposed amendment is insufficient in law and [*15] would be a futile act, it is proper to deny leave to amend. *Baker v. Pacific Far East Lines, Inc.,* 451 F.Supp. 84, 89 (N. D. Cal. 1978). "A motion for leave to amend may be denied if it appears to be futile or legally insufficient." *Miller v. Rykoff Saxon, Inc.,* 845 F.2d 209, 214 (9th Cir. 1988). Thus, Plaintiff's Motion for Leave to Amend is **DENIED.**

### STATEMENT OF FACTS

Plaintiff alleges that Defendant County of San Bernardino, by and through its officers, employees and agents located at West Valley Detention Center implemented a telephone system, custom/policy whereby Plaintiff's constitutional rights were violated in that all of Plaintiff's telephone calls to his attorney placed from West Valley Detention Center were monitored and recorded. (Complaint at 5.)

On or about July 21, 2003, at approximately 2:30 p.m. Plaintiff consulted with his attorney via a telephone call that he placed from a West Valley Detention Center telephone. The prerecorded message at the beginning of the telephone call indicated that all calls placed from West Valley Detention Center are monitored and recorded. (Complaint at 5; *see* Declaration of Tristan G. Pelayes, Ex. B; Plaintiff's deposition transcript at p. [*16] 8; lines 10-25; Ex. C, Plaintiff's deposition at p. 9 lines 9-25.)

During Plaintiff's incarceration at West Valley Detention Center, Plaintiff was able to, and in fact received, visits from his attorney and his staff, his family members, he was able to send letters and correspond and he was able to exchange documents with his attorney. (*See* Declaration of Tristan G. Pelayes, Ex. D, Plaintiff's deposition transcript at p. 19, lines 13-25; Ex. E, Plaintiff's deposition transcript at p. 20, lines 1-21; Ex. F, Plaintiff's deposition transcript at p. 30, lines 1-19.)

Plaintiff alleges that his First, Fourth, Fifth, Sixth and Fourteenth Amendment rights to the United States Constitution have been violated by Defendant. (Complaint at 5.) Plaintiff seeks monetary and compensatory damages in the amount of $ 5,000,000.00, and that the Court implement new federal guidelines to prevent the West Valley Detention Center officers from monitoring Plaintiff's telephone calls to his attorney. (Complaint at 5.)

### PLAINTIFF'S CAUSES OF ACTION

Plaintiff alleges that his First, Fourth, Fifth, Sixth and Fourteenth Amendment rights to the United States Constitution have been violated by Defendant. (Complaint at [*17] 5.)

### STANDARD OF REVIEW

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. [2] *Celotex Corp. v. Catrett,* 477 U.S. 317,

323, 106 S.Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue of material fact warranting trial. Fed. R. Civ. P. 56(e); *Celotex,* 477 U.S. at 324. In resolving a motion for summary judgment, "[T]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

> 2 Affidavits supporting [*18] (and opposing) summary judgment must be made on personal knowledge, must set forth admissible statements of fact, and must show affirmatively that the affiant is competent to testify to the matters stated therein. Fed.R.Civ.P. 56(e). A verified complaint, to the extent it is based on a plaintiff's personal knowledge, meets the affidavit requirement. *McElyea v. Babbitt,* 833 F.2d 196, 198 n.1 (9th Cir. 1987).

Under this standard, the mere existence of an alleged factual dispute between the parties will not withstand summary judgment. *Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). A factual dispute qualifies as "material" only if it "might affect the outcome of the suit under the governing law[.]" *Anderson,* 477 U.S. at 248 (noting that "the substantive law will identify which facts are material" and that "[f]actual disputes that are irrelevant or unnecessary" in relation to the legal elements of the claims "will not be counted"); *S.E.C. v. Seaboard Corp.,* 677 F.2d 1301, 1306 (9th Cir. 1982)("A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth.")(citation omitted). A "dispute [*19] about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248; *see also Harris,* 127 S.Ct. at 1776 ("Where the record taken as a whole would not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial").

In determining whether a triable issue of material fact exists, the evidence must be considered in the light most favorable to the non-moving party. *Barlow v. Ground,* 943 F.2d 1132, 1134 (9th Cir. 1991). However, summary judgment cannot be avoided by relying solely on conclusory allegations unsupported by factual data. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989). More than a "metaphysical" doubt is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Mere reliance on the pleadings and conclusory allegations are insufficient to preclude summary judgment. *Celotex Corp.,* 477 U.S. at 324. A party opposing a properly supported motion for summary judgment "... must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 247, [*20] *citing First National Bank of Arizona v. Cities Services Co.,* 391 U.S. 253, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968).

Finally, where the evidence conflicts, questions of credibility and motivation generally present an issue of material fact inappropriate for resolution on summary judgment. *See, Allen v. Scribner,* 812 F.2d 426, 435, 437 (9th Cir. 1987), *amended on other grounds,* 828 F.2d 1445 (9th Cir. 1987); *see also Valandingham v. Bojorquez,* 866 F.2d 1135, 1139, 1140 (9th Cir. 1989)(genuine issue of material fact existed as to whether defendants committed the alleged retaliatory acts). Thus, when a plaintiff presents evidence on which the trier of fact could reasonably resolve a material factual issue in his favor, summary judgment for defendants is not appropriate. *See, Barlow v. Ground,* 943 F.2d 1132, 1136 (9th Cir. 1991), *cert. denied,* 505 U.S. 1206, 112 S. Ct. 2995, 120 L. Ed. 2d 872 (1992); *see also Neely v. Feinstein,* 50 F.3d 1502, 1509 (9th Cir. 1995).

## PARTIES' CONTENTIONS

### A. *Defendant's Motion for Summary Judgment.*

Defendant contends that it is entitled to summary judgment on the following grounds: (1) Plaintiff's claims under the Fourth, Fifth, Sixth and Fourteenth Amendments fail as a matter of law; and (2) Plaintiff's claim under [*21] the First Amendment fails as a matter of law.

Plaintiff alleges his Complaint states a claim under the First, Fourth, Fifth, Sixth and Fourteenth Amendments and also under California Penal Code Sections 632 and 636.

### B. *Plaintiff's Counter-Motion for Summary Adjudication/Judgment.*

Plaintiff contends he is entitled to summary adjudication and judgment in his favor as the Defendant violated state law, ignored state regulatory minimum standards and failed to follow their own written policy to obtain a court order prior to recording client-attorney calls.

Defendant contends Plaintiff has failed to state a claim under Penal Code § 632(a) as Plaintiff was forewarned by a prerecorded message that his conversation would be monitored and recorded.

## DISCUSSION

Considering the evidence presented by the parties in the light most favorable to Plaintiff, and drawing all reasonable inferences for Plaintiff, Defendant's Motion for Summary Judgment should be granted and Plaintiff's Complaint should be dismissed.

## I

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**A.** *Section 1983 Requirements.*

In order to state a claim under section 1983, a plaintiff must allege that: (1) the defendants were acting under color of state law [*22] at the time the complained of acts were committed; and (2) the defendants' conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Karim-Panahi v. Los Angeles Police Dept.,* 839 F.2d 621, 624 (9th Cir. 1988); *Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc), *cert. denied,* 478 U.S. 1020, 106 S. Ct. 3333, 92 L. Ed. 2d 739 (1986). Liability under section 1983 is predicated upon an affirmative link or connection between the defendants' actions and the claimed deprivations. *See Rizzo v. Goode,* 423 U.S. 362, 372-73, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976); *May v. Enomoto,* 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir. 1978).

> A person deprives another of a constitutional right, where that person "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made."

[citation] Indeed, the "requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should [*23] know would cause others to inflict the constitutional injury." [citation]

*Hydrick v. Hunter,* 500 F.3d 978, 988 (9th Cir. 2007) (quoting *Johnson v. Duffy,* 588 F.2d at 743-44).

**1.** *Plaintiff's Claims Under The First, Fourth, Fifth, Sixth And Fourteenth Amendments Must Fail.*

It has long been held that a prison's monitoring and recording of an inmate's telephone calls do not violate that inmate's constitutional rights where he or she is given notice beforehand of such surveillance. *See United States v. Hearst,* 563 F.2d 1331, 1344-48 (9th Cir. 1977)(holding so in context of Fourth and Sixth Amendment claims), *United States v. Van Poyck,* 77 F.3d 285, 290-91 (9th Cir. 1996)(Pretrial detainee did not have subjective reasonable expectation of privacy in telephone calls from jail at Metropolitan Detention Center (MDC) and thus routine recording of telephone conversations did not violate Fourth Amendment). Moreover, such foreknowledge vitiates any argument as is necessary to make out a Fifth Amendment claim that a statement made by Plaintiff afterwards was somehow coerced. *See Alexander v. Connecticut,* 917 F.2d 747, 750-51 (2nd Cir. 1990).

Here, Plaintiff acknowledges that he was given advance notice [*24] of the jail's monitoring of his phone calls beforehand (see Complaint at 5; Declaration of Tristan G. Pelayes, Exs. B and C); thus, his Complaint fails to state a Fourth, Fifth or Sixth Amendment claim upon which relief may be granted.

**2.** *Plaintiff Has Failed to State Claim Under the Sixth Amendment.*

"In order to show that the government's alleged intrusion into the attorney-client relationship amounted to a violation of the Sixth Amendment, a defendant must show, at a minimum, that the intrusion was purposeful, that there was communication of defense strategy to the prosecution, or that the intrusion resulted in tainted evidence." *United States v. Fernandez,* 388 F.3d 1199, 1240 (9th Cir. 2004), *modified,* 425 F.3d 1248 (9th Cir.

2005). Plaintiff has made no such showing. Plaintiff's Complaint alleges that on July 21, 2003 his telephone calls to his attorney were monitored and recorded. (Complaint at 5.)Plaintiff was convicted and sentenced in 2001. [3]

> 3   The Court takes judicial notice of its owns files and records in *Tejay Steele v. L. E. Scribner,* Case No. ED CV 06-00250-ODW (VBK). Plaintiff filed a habeas petition concerning his state court conviction and sentence. The Court notes that [*25] Petitioner was convicted and was sentenced in 2001 to 80 years to life in state prison. *See Mir v. Little Company of Mary Hospital,* 844 F.2d 646, 649 (9th Cir. 1988). (*See also* Defendant's Supplemental Brief, Ex. C.)

While Defendant could have done more to insure that the phone system did not capture attorney-client conversations in the first place, there is no evidence to suggest that they deliberately set out to intrude on Plaintiff's confidential relationship with his counsel. There was no showing that defense strategy was actually communicated to the prosecution team. Further, no claim has been raised that any evidence presented at trial was tainted by the alleged intrusion upon Plaintiff's Sixth Amendment rights.

While it is true that "in some situations ... government interference with a confidential relationship between a defendant and his counsel may implicate Sixth Amendment rights. *See, e.g., Weatherford v. Bursey,* 429 U.S. 545, 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977). [S]uch an intrusion violates the Sixth Amendment only when it substantially prejudices the defendant." *Clutchette v. Rushen,* 770 F.2d 1469, 1471 (9th Cir. 1985); *see Williams v. Woodford,* 384 F.3d 567, 585 (9th Cir. 2004)(holding that substantial [*26] prejudice sufficient to establish a Sixth Amendment violation from jailhouse monitoring of conversations was not shown when there was no evidence "that the prosecution used any confidential information obtained from the monitoring or interception to achieve an unfair advantage at trial;" *United States v. Lentz,* 419 F.Supp.2d 820, 835 (E.D. Va. 2005)(holding that prisons' "practice of recording and monitoring all inmate telephone calls does not violate *Lentz's* Sixth Amendment right"). Here, as noted, Plaintiff was convicted in 2001 and complains that in July of 2003 his telephone calls to his attorney were recorded. Plaintiff has not made a showing of substantial prejudice sufficient to establish a Sixth Amendment violation.

Plaintiff also alleges that he was harmed by the lack of access to a confidential phone because he could not obtain adequate representation in his criminal case. (Defendant's Supplemental Brief re Equal Protection Claim, Ex. "E") Plaintiff raised an ineffective assistance of counsel claim on habeas corpus which was denied. rape.

In *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L. Ed. 2d 383 (1994), the Supreme Court held that in order to recover damages for allegedly unconstitutional [*27] conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a 42 U.S.C. section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* at 486-487. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. *See Id.* at 487.

Here, Plaintiff does not claim physical injury and may not recover for mental or emotional distress absent a physical injury. *See* 42 U.S.C. § 1997e(e). Thus, while Plaintiff's Sixth Amendment claim has already been denied on habeas review, the only harm or injury in fact that Plaintiff has identified that may be remedied under the Prison Litigation Reform Act by damages is a reversal of the criminal conviction for forcible rape based on lack of adequate representation. (*See* Defendant's Supplemental Brief at 5, Ex. E.) Plaintiff's claim under the Sixth Amendment fails.

### 3. *Plaintiff Has Failed to* [*28] *State a Claim Under the Fifth Amendment.*

Plaintiff in conclusory language alleges that his Fifth Amendment rights were violated. Plaintiff has not claimed that any of his statements from the phone calls at issue were introduced against him at his criminal trial. There is nothing in the record about whether Plaintiff testified at trial, let alone anything to show that, while testifying, he was confronted with recorded statements he had previously made to his attorney. Nor is there anything to suggest that Plaintiff was ever threatened with the use of his statements against him at trial. "The

scope of the Fifth Amendment's efficacy is narrower when used as a sword in a civil suit than when used as a shield against criminal prosecution." *United States v. Antelope,* 395 F.3d 1128, 1141 (9th Cir. 2005). Thus, Plaintiff has failed to state a claim under the Fifth Amendment.

### 4. *Plaintiff Has Failed to State a Claim under the Fourth Amendment.*

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. Amend. IV. This protection "is not triggered unless the State intrudes into an area "in which there is a constitutionally protected reasonable expectation of privacy." [*29] *Van Poyck,* 77 F.3d at 290 (quoting *New York v. Class,* 475 U.S. 106, 112, 106 S. Ct. 960, 89 L. Ed. 2d 81 (1976). There is no "constitutionally protected reasonable expectation of privacy" unless the person claiming this protection has an "actual subjective expectation of privacy in the place searched," and "society is objectively prepared to recognize that exception." *Van Poyck,* 77 F.3d at 290.

Applying this standard in the context of routinely recorded prison calls, the Ninth Circuit held that any expectation of privacy in outbound calls from prison is not objectively reasonable and that the Fourth Amendment is therefore not triggered by the routine taping of such calls. Assuming that the Fourth Amendment were triggered, institutional security concerns justify such recordings and render them reasonable for Fourth Amendment purposes." (*Id.* at 291.) Other courts have reached the same conclusion. *United States v. Horr,* 963 F.2d 1124, 1126 n.3 (8th Cir. 1992)(inmate who impliedly consented to recording of phone calls by Bureau of Prisons "had no expectation of privacy concerning the content of his telephone conversations"; *United States v. Sababu,* 891 F.2d 1308, 1329 (7th Cir. 1989)(holding that non-inmate [*30] had no reasonable expectation of privacy in calls from inmate); *United States v. Amen,* 831 F.2d 373, 379-80 (2nd Cir. 1987)("In a prison context the reasonableness of a search is directly related to legitimate concerns for institutional security ... If security concerns can justify strip and body cavity searches ... and wholly random cell searches ... then surely it is reasonable to monitor prisoners' telephone conversations, particularly where they are told that the conversations are being monitored.").

Here, Plaintiff did not have a subjective expectation of privacy, because he knew his calls might be recorded and monitored. Furthermore, "consent vitiates a Fourth Amendment claim." *Van Poyck,* 77 F.3d at 291. Implied consent is sufficient for Fourth Amendment purposes as it is for the Federal Wiretap Act. *United States v. Workman,* 80 F.3d 688, 694 (2nd Cir. 1996). Thus, as Plaintiff used the jail phones after being warned that his calls might be monitored and recorded, his Fourth Amendment claim must fail. And, since only one participant in a conversation must consent to monitoring to satisfy the Fourth Amendment, *Workman,* 80 F.3d at 694, Plaintiff's consent suffices, whatever subjective [*31] expectations his attorney may have had with respect to the calls. Prisoners must be able to communicate privately with their attorneys, but prisons have significant discretion in imposing restrictions on such consultations." *United States v. Lentz,* 419 F.Supp.2d 820, 835 (E.D. Va. 2005) (finding that prison could monitor all inmate calls, including those to attorneys, since prisoners could communicate confidentially with their attorneys by mail and in person. Attorneys and their incarcerated clients, just like attorneys and their clients more generally, must take some care to insure they are in fact speaking privately if they want their conversations to be protected by the privilege. A prison "is not constitutionally compelled to provide an inmate with the most convenient or his preferred mode of conferring with his attorney.") *Id.* at 836.

Here, in the face of the warning, Plaintiff heard that his call might be monitored and recorded. Accordingly, Plaintiff's Fourth Amendment claim fails.

### 5. *Plaintiff Has Failed To State A Violation Of The First Amendment.*

Similarly, Plaintiff's claim under the First Amendment also lacks merit. Prisoners possess a First Amendment right to communicate with [*32] persons outside prison walls. *See Valdez v. Rosenbaum,* 302 F.3d 1039, 1048 (9th Cir. 2002) *cert. denied* 538 U.S. 1047, 123 S. Ct. 2110, 155 L. Ed. 2d 1087 (2003); *Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir. 1996); *Strandberg v. City of Helena,* 791 F.2d 744, 747 (9th Cir. 1986); *Carlo v. City of Chino,* 105 F.3d 493, 496 (9th Cir. 1997)(The Ninth Circuit affirmed the "existence of a First Amendment Right to telephone access subject to reasonable security limitations."). Use of a telephone, however, only provides a means of exercising that right.

That is to say, a prisoner's use of the telephone is not a right in and of itself. The key to determining whether any First Amendment right has been violated is whether the prisoner retained "alternative means of exercising" that right. Citing *Thornburgh v. Abbott,* 490 U.S. 401, 417-18, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989).

Inmates clearly retain protections afforded by the First Amendment, *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L. Ed. 2d 495 (1974), such as the right to communicate with family and friends. Second, lawful "incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." **[*33]** *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L. Ed. 2d 282 (1987)[citing *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L. Ed. 1356 (1948)]. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security. *Pell v. Procunier,* 417 U.S. at 822-823, 94 S.Ct. at 2804. The United States Supreme Court has said that evaluation of penological objectives is committed to the considered judgment of prison administrators, "who are actually charged with and trained in the running of the particular institution under examination." *Bell v. Wolfish,* 441 U.S. 520, 562, 99 S.Ct. 1861, 1886, 60 L. Ed. 2d 447 (1979); see *Turner v. Safley,* 482 U.S. 78, 85, 107 S.Ct. 2254, 2259, 96 L. Ed. 2d 64 (1987). Especially "[w]here a state penal system is involved, federal courts have ... additional reason to accord deference to the appropriate prison authorities." *Safley,* 482 U.S. at 85, 107 S.Ct. at 2259.

The Supreme Court has determined that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied **[*34]** to alleged infringements of fundamental constitutional rights. *Jones v. North Carolina Prisoner's Labor Union, Inc.,* 433 U.S. 119, 128, 97 S.Ct. 2532, 2539, 53 L. Ed. 2d 629 (1977). "[W]hen a prison regulation impinges on an inmate's constitutional rights, the regulation is valid if it reasonably related to legitimate penological interests." *Turner v. Safley* 482 U.S. at 89, 107 S.Ct. at 2261. In applying this standard, courts are to consider the following factors: (1) whether there is a valid rational connection between the prison regulation or practice and a legitimate governmental interest; (2) whether the regulation or practice allows inmates an alternative means of exercising the subject constitutional rights; (3) the impact of the accommodation of the asserted right on guards, other inmates, and the allocation of resources generally; and (4) the absence of ready alternatives to the regulation or practice. *Turner v. Safley,* 482 U.S. at 89-91, 107 S.Ct. at 2261-63.

The right of access to counsel is an essential component of the right to adequate, effective and meaningful access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 820, 822-23, 97 S.Ct. 1491, 52 L. Ed. 2d 72 (1983); *Ching v. Lewis,* 895 F.2d 608, 609-10 (9th Cir. 1990). **[*35]** "The opportunity to communicate privately with an attorney is an important part of that meaningful access." *Ching,* 895 F.2d at 609; *see also Jones v. City and County of San Francisco,* 976 F.Supp. 896, 913 (N.D. Cal. 1997) (noting that lack of privacy in attorney-client consultations raises concerns under the Sixth and Fourteenth Amendments).

A pre-trial detainee's right of access to counsel, however, may be subject to reasonable conditions or restrictions that are not punitive in nature. *See Bell v. Wolfish,* 441 U.S. 520, 535-541, 99 S.Ct. 1861, 60 L. Ed. 2d 447 (1979); *Valdez v. Rosenbaum,* 302 F.3d 1039, 1045 (9th Cir. 2002), *cert. denied,* 538 U.S. 1047, 123 S. Ct. 2110, 155 L. Ed. 2d 1087 (2003); *Benjamin v. Fraser,* 264 F.3d 175, 185 (2nd Cir. 2001)("Prison regulations restricting pre-trial detainees' contact with their attorneys [are] unconstitutional where they unreasonably burden the inmate's opportunity to consult with his attorney and to prepare his defense" [internal quotations marks omitted]); *Johnson-El v. Schoemehl,* 878 F.2d 1043, 1052 (8th Cir. 1989)("Significant restrictions on telephone access to attorneys by pre-trial detainees must be adequately justified"). "Prisoners have a First Amendment right to telephone access subject **[*36]** to reasonable security limitations." *Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir. 1996).

Here, Plaintiff's Complaint fails to set forth allegations of a First Amendment violation. Plaintiff complains of the jail's policy to monitor and record telephone calls. While Plaintiff alleges that his cause of action accrued on July 21, 2003, the Court notes Plaintiff was convicted in 2001. Plaintiff admitted he was able to receive official visits from his attorneys and their staff, he was able to exchange documents with his attorneys, and was able to receive visits from family members and write

letters. Because Plaintiff could still receive visitors at the jail and could send and receive mail without those conversations being recorded, his Complaint fails to state a First Amendment violation. *Valdez,* 302 F.3d at 1049.

**6. *Plaintiff's Claim Under the Fourteenth Amendment Must Fail.***

Beginning in October of 2001, West Valley Detention Center recorded all inmate calls with the exception of calls made from the intake phones pursuant to California Penal Code § 851.5. (*See* "Defendant's Supplemental Brief re Equal Protection Claim; Declarations of Blankenship and Precup; Exhibits 'A' to 'E'" filed on November [*37] 20, 2006 [Precup Dec. P 2, 1:18-20; P 5, 3-3.5].) Inmates have always been provided unlimited private in-person visits and correspondence with their attorneys. (Precup Dec. P 3, 2: 15-20.)

The only exception to the recording of non-851.5 calls occurred from May 22, 2002 to July 21, 2004 when the recording system was turned off for the law library phone. Jail staff determined that since use of the law library phone, unlike inmate phones in the housing unit, was limited by policy to *pro per* inmate calls on their cases, the threat to security was minimized. (Precup Dec. P 5, 3:5-13; Blankenship Dec., P 5, 2:9-11; Ex. B, Trial Court *Pro per* Policy Memorandum, p. 3. "The use of the library is restricted to legal research and telephone calls directly related to an inmate's case.") Misuse of the law library phone was subject to discipline. (Ex B., p. 3.) *Pro per* inmates were also not similarly situated to *non-pro per* inmates in that they were not represented by counsel who could do their legal work for them. (Precup Dec. P 5, 3:14-17.)

Plaintiff was incarcerated at West Valley Detention Center from January 23, 2001 to December 11, 2001, and from July 8, 2003 to November 4, 2003. (Blankenship [*38] Dec. P 3, 1:22-25.) Plaintiff was convicted of rape in November of 2001. (Supplemental Brief, Ex. C at 1-4; deposition of Plaintiff, Ex. E 12: 16-18.) [4]

> 4 Judicial notice of Plaintiff's conviction is taken pursuant to Federal Rule of Evidence Rule 201(d).

To assert a claim under the Equal Protection Clause, Plaintiff must show that he was similarly situated to other inmates who received preferential treatment. *See Fraley v. United States Bureau of Prisons,* 1 F.f3d 924, 925 (9th Cir. 1993). "The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L. Ed. 2d 313, (1985)(citing *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L. Ed. 2d 786, (1982)). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998), [*39] *cert. denied,* 525 U.S. 1154, 119 S. Ct. 1058, 143 L. Ed. 2d 63 (1999). Thus, to state a cognizable equal protection claim, Plaintiff must allege facts demonstrating that he "received different treatment from that received by others similarly situated." *Van Pool v. City and County of San Francisco,* 752 F.Supp. 915, 927 (N.D. Cal. 1990), *affirmed,* 966 F.2d 503 (9th Cir. 1992). In other words, a plaintiff must show proof of discriminatory motive or intent.

Plaintiff filed suit in this matter on August 13, 2003 while he was incarcerated at the West Valley Detention Center. (Ex. D at 1.) The West Valley Detention Center grievance policy in effect at the time of Plaintiff's incarceration provided for a grievance procedure available to West Valley Detention Center inmates to address any condition of confinement, including telephone issues. (Blankenship Dec. P 2, 1: 12-17; Ex. A, Inmate Grievances, section 220.00, p. 1.) Plaintiff filed no grievances at West Valley Detention Center regarding any telephone issue despite having filed grievances on September 18, 2001 and October 9, 2003 for medical matters. (Blankenship Dec. P 3, 1:22-2: 1; Ex. D, p. 2.) Plaintiff alleged in his Complaint that he did not file a [*40] grievance because this is a constitutional issue. Plaintiff also alleges that he suffered from lack of adequate representation and a criminal conviction because of lack of access to an unrecorded phone. (Ex. E, 11:20-12: 21; 15: 5-15.)

Plaintiff as a *non-pro per* inmate was not similarly situated to *pro per* inmates with respect to law library telephone use. Plaintiff contends that he as a *non-pro per* inmate was similarly situated to *pro per* inmates with regard to access to the unrecorded telephone in the law library. However, this contention is without merit because *non-pro per* and *pro per* inmates are not equally

situated in regard to access to the courts or an attorney and therefore not equally situated in regard to their need for a law library or law library telephone.

A law library simply means providing court access to *pro per* inmates to challenge a conviction or pursue a civil rights action regarding the conditions of their confinement. *Lewis v. Casey,* 518 U.S. 343, 350-53, 116 S.Ct. 2174, 135 L. Ed. 2d 606 (1996)(holding that there is no constitutional right to law libraries or assistance of counsel; rather, the right involved is meaningful access to the courts); *see also Valdez v. Rosenbaum,* 302 F.3d 1039, 1047-48 (9th Cir. 2002) **[*41]** (casting doubt on existence of a prisoner's right to use a telephone and observing that defendant need only provide some means of exercising First Amendment right). *Non-pro per* access to the courts is provided through an attorney. Unlike *pro per* inmates, Plaintiff had means available to him other than the law library to work on his case.

As noted, the right to confer confidentially with an attorney does not include a right to unrecorded telephone access, provided other means of private communication are provided. In *United States v. Lentz,* 419 F.Supp.2d 820, 834-35 (E.D. Va. 2005), the defendant asserted in a motion to suppress that a jail's across-the-board practice to record telephone calls, even calls to an attorney, effectively denied him his Sixth Amendment right to counsel. The Court denied the Sixth Amendment challenge on the ground that inmates were allowed to confer privately with attorneys in person or by mail. *Id.* at 835. The Court also ruled that the 90-mile travel distance for defendant's counsel did not effectively deny assistance of counsel because the Constitution does not compel the best or preferred method of access. *Id.* at 836. Similarly, in *United States v. Noriega,* 764 F.Supp. 1480 (S.D. Fla. 1991), **[*42]** the Court ruled that the Sixth Amendment was not violated by a practice of recording all calls except upon a specific request to jail staff to make an unrecorded, unmonitored call to an attorney and verification that the inmate was calling an attorney.

To state an equal protection claim under § 1983, Plaintiff must show that this Defendant acted with an intent or purpose to discriminate against him based upon membership in a protected class. See *Lee v. City of Los Angeles,* 250 F.3d 668, 686 (9th Cir. 2001), *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998). Plaintiff's allegations are insufficient to establish a violation of the Fourteenth Amendment.

II

*PLAINTIFF'S COUNTER-MOTION FOR SUMMARY JUDGMENT*

**A.** *Plaintiff has Failed to State a Claim Under Penal Code § 632.*

Plaintiff's counter-motion for summary adjudication and judgment is based on his belief that Defendant County of San Bernardino violated California Penal Code § 632(a). California Penal Code § 632(a) states in pertinent part:

> "(a) Every person who intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device eavesdrops upon or records the **[*43]** confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($ 2500.00), or imprisonment in the county jail not exceeding one year, or in the state prison, or by both by fine and imprisonment.
>
> . . .
>
> (c) The term "confidential communication" includes any communication carried on and circumstances as may reasonably indicate that any party to the communication desires that to be confined to the parties thereto, but excludes the communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any circumstance in which the parties to the communication may reasonably expect that the communication may be over heard or recorded."

In order for defendant County of San Bernardino to be guilty of violating California Penal Code § 632, the

parties must have been engaged in a confidential communication. Penal Code § 632(c) specifically excludes as a confidential communication, a communication made under circumstances "... which [*44] the parties to the communication may reasonably expect that their communication may be overheard or recorded." Here, the allegations in Plaintiff's Complaint readily acknowledge that Plaintiff was given advance notice in a form of a prerecorded message advising Plaintiff that his calls would be subject to monitoring and recording. Plaintiff confirmed that he was given such advance notice at his deposition. (See Complaint at 5; Ex. B, plaintiff's deposition at pg. 8, lines 10-25; Ex. C, plaintiff's deposition at pg. 9, lines 1-25). Thus, Plaintiff has failed to state a claim under Penal Code § 632(a).

Plaintiff has also failed to state a claim under Penal Code Section 636 which provides as follows:

> "(a) Every person who, without permission from all parties to the conversation, eavesdrops on or records, by means of an electronic device, a conversation, or any portion thereof, between a person who is in the physical custody of a law enforcement officer or other public officer, or who is on the property of a law enforcement agency or other public agency, and that person's attorney, religious adviser, or licensed physician, is guilty of a felony."

This section applies to conversations that [*45] occur in a place where there exists a reasonable expectation of privacy. Here, Plaintiff had no expectation of privacy as the prerecording clearly advised Plaintiff that his conversation was being monitored and recorded. Therefore, Penal Code § 636 is inapplicable to the within matter.

*RECOMMENDATION*

For all of the foregoing reasons, **IT IS THEREFORE RECOMMENDED** that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) granting Defendant's Motion for Summary Judgment; (3) denying Plaintiff's Counter-Motion for Summary Adjudication and Judgment; and (4) dismissing Plaintiff's Complaint.

DATED: October 28, 2009

/s/

VICTOR B. KENTON

UNITED STATES MAGISTRATE JUDGE

*NOTICE*

Reports and Recommendations are not appealable to the Court of Appeals, but are subject to the right of any party to timely file Objections as provided in the Local Rules Governing the Duties of the Magistrate Judges, and review by the District Judge whose initials appear in the docket number. No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.



**TEJAY STEELE, Plaintiff, v. COUNTY OF SAN BERNARDINO, Defendants.**

**No. CV 03-05774-PA (VBK)**

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

**2010 U.S. Dist. LEXIS 12990**

**February 12, 2010, Decided
February 12, 2010, Filed**

**PRIOR HISTORY:** Steele v. County of San Bernardino, 2009 U.S. Dist. LEXIS 125000 (C.D. Cal., Oct. 28, 2009)

**COUNSEL:** **[\*1]** Tejay Steele, Plaintiff, Pro se, Corcoran, CA.

For County of San Bernardino, Defendant: James H Thebeau, LEAD ATTORNEY, San Bernardino County Counsel, San Bernardino, CA.

**JUDGES:** PERCY ANDERSON, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** PERCY ANDERSON

**OPINION**

 ORDER (1) ACCEPTING AND ADOPTING THE AMENDED REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE, AND (2) DISMISSING THE COMPLAINT

 Pursuant to 28 U.S.C. § 636, the Court has reviewed the Complaint and all other papers along with the attached Amended Report and Recommendation of the United States Magistrate Judge, and has made a *de novo* determination of the Amended Report and Recommendation.

 **IT IS THEREFORE ORDERED** that a Judgment be entered (1) approving and adopting the Amended Report and Recommendation, (2) granting Defendant's Motion for Summary Judgment; (3) denying Plaintiff's Motion for Summary Judgment; and (4) directing that Judgment be entered dismissing the Complaint, and the action, with prejudice.

 DATED: *February 12, 2010*

 /s/ Percy Anderson

 PERCY ANDERSON

 UNITED STATES DISTRICT JUDGE

 JUDGMENT

 Pursuant to the Order of the Court approving the recommendations of the United States Magistrate Judge, and adopting the same as the facts and conclusions **[\*2]** of law herein,

 **IT IS ADJUDGED** that Judgment be entered dismissing the Complaint and entire action with prejudice.

 DATED:*February 12, 2010*

 /s/ Percy Anderson

 PERCY ANDERSON

 UNITED STATES DISTRICT JUDGE